# IN THE SUPREME COURT, STATE OF WYOMING

# 2023 WY 110

OCTOBER TERM, A.D. 2023

November 16, 2023

BOARD OF PROFESSIONAL
RESPONSIBILITY,
WYOMING STATE BAR,

Petitioner,

v.

D-23-0004

GAYLA K. AUSTIN, WSB #6-4397,

Respondent.

*Original Proceeding for Attorney Discipline*

*Representing Petitioner:*
    Melinda S. McCorkle, Deputy Bar Counsel, Wyoming State Bar.

*Representing Respondent:*
    Bill G. Hibbler, Bill G. Hibbler, P.C., Cheyenne, Wyoming.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**GRAY, Justice.**

[¶1]   The Wyoming State Bar (Bar) charged attorney Gayla K. Austin with violations of Rules 1.6, 3.3, and 1.16 of the Wyoming Rules of Professional Conduct for Attorneys at Law.  After a hearing, the Board of Professional Responsibility (BPR)[1] submitted its report to this Court and recommended a sixty-day suspension for violations of Rules 3.3(a)(1) and 1.6 and dismissal of the charges alleging violations of Rule 1.16.[2]  Ms. Austin objects to the BPR's conclusion she violated Rules 1.6 and 3.3, as well as the proposed sanctions. After review of the record, including the exhibits and depositions admitted into evidence, and consideration of the arguments of Ms. Austin and Deputy Bar Counsel, we suspend Ms. Austin from the practice of law in Wyoming for sixty days and dismiss the formal charge under Rule 1.16.

## *ISSUES*

[¶2]   The issues are:

1. Does the record contain clear and convincing evidence that Ms. Austin violated Rule 1.6(a) of the Wyoming Rules of Professional Conduct?

2. Does the record contain clear and convincing evidence that Ms. Austin violated Rule 3.3(a)(1) of the Wyoming Rules of Professional Conduct?

3. If the charges are supported by clear and convincing evidence, is a sixty-day suspension appropriate discipline for Ms. Austin's actions under Wyoming Rules of Disciplinary Procedure Rule 15(b)(3)(D)?

## *STATEMENT OF THE CASE*

### A.    Ms. Austin's Representation of Ms. Johns

[¶3]   Ms. Austin was licensed to practice law in Wyoming in 2009.  In November 2018, Ms. Austin agreed to represent Janet Johns, an Arizona resident, following the death of her father, Robert Lockman, a resident of Wheatland, Wyoming.  In his will, Robert Lockman left a four-plex in Wheatland, Wyoming, to Ms. Johns and her brother, Kevin Lockman. Ms. Johns retained Ms. Austin to assist her with complaints regarding Kevin Lockman's

---

[1] Pursuant to W.R.D.P. 15(a)(2), the BPR assigned a panel to hear this matter.
[2] Ms. Austin does not object to the dismissal of the Rule 1.16 charge.  We dismiss this charge and do not discuss it here.

1

handling of their father's affairs including his failure to administer the estate. In December 2018, Ms. Austin filed a suit against Kevin Lockman for negligently failing to administer the Robert Lockman estate. *Janet S. Johns v. Kevin L. Lockman*, CV-2018-112, Eighth Judicial District Court, Platte County, Wyoming.

[¶4]     In March 2019, Kevin Lockman and his wife Brenda Lockman executed a quitclaim deed conveying any joint interest they had in the four-plex to Brenda Lockman. About a month after the transfer to Brenda Lockman, Ms. Austin filed a motion in *Johns v. Lockman* requesting Ms. Johns be appointed executor of the Robert Lockman estate. The district court granted the motion on the day it was filed. Shortly thereafter, Kevin Lockman filed a Petition for Filing a Will Without Probate or Administration. *In the Matter of the Estate of Lockman*, PR-2019-10, Eighth Judicial District Court, Platte County, Wyoming (*Probate Case*). The *Johns v. Lockman* case was voluntarily dismissed, and the claims from that lawsuit were taken up in the *Probate Case*. Ms. Johns was named as the personal representative of the estate in the *Probate Case*.

[¶5]     In the meantime, Brenda Lockman filed a separate suit requesting the partition of the four-plex. *Brenda Lockman v. Janet Sue Johns*, CV-2019-97, Eighth Judicial District Court, Platte County, Wyoming (*Partition Case*). Ms. Austin represented Ms. Johns in this case. In February 2021, the parties stipulated to an order for sale of the four-plex at a sheriff's auction and requiring the proceeds be deposited with the district court. The sale occurred in June 2021. A bench trial was set for September 2021 to resolve disagreements affecting the distribution of the sale proceeds.

[¶6]     On April 29, 2021, Ms. Johns filed a complaint with the BPR against Ms. Austin (Bar Complaint). The Bar Complaint begins: "On several occasions Gayla Austin has threatened me that she wanted to resign from this case. I tell her that I have given her over $27,225.00 and she needs to finish the case." Ms. Johns' complaint discusses her dissatisfaction with Ms. Austin's representation, her confusion over the necessity for a sale of the four-plex by sheriff's auction instead of through a realtor, and a request for the return of her attorney fees. The final paragraph of the Bar Complaint states, "This estate is not that big . . . it should never have taken this long and [there are] so many unanswered questions just leaving me hanging out there."

[¶7]     On May 10, 2021, shortly after Ms. Johns filed her Bar Complaint, Ms. Austin filed similar motions to withdraw from representation of Ms. Johns in the *Probate* and the *Partition Cases*.[3] The *Partition Case* motion alleged:

> Pursuant to the Uniform Rules for District Courts in the
> State of Wyoming, the Defendant, Janet Sue Johns, wishes to

---

[3] The only difference in the motions is that the probate case motion did not include the statement that Ms. Johns failed to provide discovery in the case.

2

continue pro se or with other counsel. Defendant will not provide information for the required discovery for the case[,] will not return telephone calls, will not keep appointments and otherwise comply with requirements for the case to go forward. The [D]efendant has contacted a realtor to sell the property at issue in this case, which is directly contrary to this Court's stipulated order dated February 22, 2021.

Counsel has made multiple attempts by telephone calls and emails to Defendant, with the last contact being April 20, 2021, but Defendant is nonresponsive.

The Motion to Withdraw as Attorney of Record has been mailed to the [D]efendant.

The district court granted this motion the day it was filed.

[¶8]   The motion to withdraw filed in the *Probate Case* stated:

Pursuant to the Uniform Rules for District Courts in the State of Wyoming, the Defendant, Janet Sue Johns wishes to continue pro se or with other counsel. Defendant will not provide information for the case[,] will not return telephone calls, will not keep appointments and otherwise comply with requirements for the case to go forward. The [D]efendant has contacted a realtor to sell the property at issue in this case, which is directly contrary to this Court's stipulated order dated February 22, 2021, in the case CV-2019-97.

Counsel has made multiple attempts by telephone calls and emails to [Defendant], with the last contact being April 20, 2021, but [Defendant] is nonresponsive.

The Motion to Withdraw as Attorney of Record has been mailed to [the Defendant].

The district court did not rule on this motion. Additional facts will be presented as relevant in the discussion.

## B.   Disciplinary Proceeding

[¶9]   Deputy Bar Counsel (Bar Counsel) investigated Ms. Johns' Bar Complaint and the State Bar Review and Oversight Committee authorized a formal charge. Bar Counsel

3

charged Ms. Austin with violations of Rule 3.3 (Candor Toward the Tribunal), Rule 1.6 (Confidentiality of Information), and Rule 1.16 (Declining or Terminating Representation). Ms. Austin denied the charges and filed a motion for summary judgment. The BPR denied her motion. Following the hearing, the BPR determined Ms. Austin violated Rules 3.3(a)(1) and 1.6, and recommended a sixty-day suspension for the violations. Ms. Austin objected, arguing that the recommendation was not based on clear and convincing evidence.

## *STANDARD OF REVIEW*

[¶10]   This Court is charged with establishing the "practice and procedure for disciplining, suspending, and disbarring attorneys." *Bd. of Pro. Resp., Wyo. State Bar v. Hinckley*, 2022 WY 18, ¶ 2, 503 P.3d 584, 592 (Wyo. 2022) (quoting Wyo. Stat. Ann. § 5-2-118(a)(iii) (LexisNexis 2021)).

> [The Wyoming Rules of Disciplinary Procedure, Rule] 16(b) provides our standard of review: "The Court will give due consideration to the findings and recommendations of the Hearing Panel, but the ultimate judgment in proceedings under these rules is vested in the Court. Accordingly, the Court will examine the evidence, make findings, determine whether there has been an infraction of the Wyoming Rules of Professional Conduct, and impose the discipline which the Court considers appropriate." The Bar must prove violations of the Rules of Professional Conduct by clear and convincing evidence. W.R.D.P. 15(b). "The Court conducts a *de novo* review of all aspects of attorney discipline." [*Bd. of Pro. Resp. v. Custis*, 2015 WY 59, ¶ 36, 348 P.3d 823, 832 (Wyo. 2015)]. Because the Court conducts a de novo determination in attorney discipline cases, it should not "adopt" BPR reports but make its own findings based on the record. We bear the ultimate responsibility for deciding whether misconduct has occurred and, if so, what discipline is warranted. Neither the BPR's findings of fact nor its view of the evidence or the credibility of witnesses binds this Court, although we give due consideration to those findings, if any. The same is true when the parties stipulate to misconduct and a recommendation for discipline.

*Hinckley*, ¶ 4, 503 P.3d at 593.

[¶11]   Our review is limited to the formal charge and those charges where an attorney was provided notice of the facts, the alleged misconduct, and rules violated. *Hinckley*, ¶¶ 7–9,

4

503 P.3d at 594–95; W.R.D.P. 13(a) ("[A] formal charge . . . shall set forth clearly and with particularity the grounds for discipline with which the respondent is charged and the conduct of the respondent which gave rise to those charges."). Bar counsel must prove an alleged violation of the rules by clear and convincing evidence. W.R.D.P. 15(b). "Clear and convincing evidence is 'that kind of proof that would persuade a trier of fact that the truth of the contention is highly probable.'" *Bd. of Pro. Resp., Wyo. State Bar v. Stinson*, 2014 WY 134, ¶ 29, 337 P.3d 401, 409 (Wyo. 2014) (quoting *Bd. of Pro. Resp., Wyo. State Bar v. Richard*, 2014 WY 98, ¶ 53, 335 P.3d 1036, 1052 (Wyo. 2014), *reinstatement granted*, 2017 WY 80, ¶ 53, 397 P.3d 201 (Wyo. 2017)). Our review is conducted with a focus on "safeguarding the interests of the public, the courts, and the legal profession." *Hinckley*, ¶ 3, 503 P.3d at 593.

## DISCUSSION OF THE CHARGES

[¶12] We begin with a review of the record to see if it contains clear and convincing evidence establishing the charges. We then turn to the appropriateness of the recommended sanction.

### I. Does the record contain clear and convincing evidence that Ms. Austin violated Rule 1.6(a) of the Wyoming Rules of Professional Conduct?

[¶13] Ms. Austin was charged with a violation of her duty to protect Ms. Johns' client confidentiality under Rule 1.6(a). The BPR determined Ms. Austin "reveal[ed] confidential information for which disclosure was not authorized" in violation of Rule 1.6(a) based on two assertions made in her motions to withdraw. First, Ms. Johns failed to assist in discovery and, second, Ms. Johns contacted a realtor to sell the home in violation of the district court's order. It did not address the disclosure of missed appointments and unreturned telephone calls. We limit our discussion to those disclosures which form the basis of the BPR's recommendation.

[¶14] Rule 1.6. Confidentiality of Information, provides:

> (a) A lawyer shall not reveal confidential information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b).

W.R.P.C. 1.6. "'Confidential information' is information provided by the client or relating to the client which is not otherwise available to the public." W.R.P.C. 1.0(b). Comment 3 to Rule 1.6 states:

5

The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all confidential information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Rules of Professional Conduct or other law.

W.R.P.C. 1.6 cmt. 3.

## A. Statement Regarding Failure to Cooperate in Discovery

[¶15] Addressing Ms. Austin's disclosure that Ms. Johns failed to cooperate with discovery, the Hearing Panel said:

> [T]he [Hearing] Panel was deeply troubled by [Ms. Austin's] assertions to the Court, in a public filing, about [Ms.] Johns' alleged failure to cooperate in discovery (the documents seem to belie the assertion) and by [Ms. Austin's] assertion that this was already disclosed to the Court by opposing counsel (the documents clearly belie the assertion). At most, the motion to compel discovery filed by opposing counsel indicated a failure by Ms. Johns and her counsel to properly respond to the discovery at issue. Presumably opposing counsel did not know the cause of the failures—and he certainly did not reveal them to be [Ms.] Johns' failure to cooperate or assist [Ms. Austin].

Ms. Austin admits she did not seek or receive consent from Ms. Johns to disclose information prior to filing her motions to withdraw. She argues her disclosures regarding Ms. Johns' failure to comply with the requirements for the case to go forward, were not a violation of Rule 1.6 because the district courts regularly require this information and disclosure was acceptable under the general standards of Wyoming courts. Ms. Austin's argument is directly addressed in Rule 1.16, which states in pertinent part:

> (d)     Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not

6

been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by Rule 1.15A or other law.

W.R.P.C. 1.16(d).

[¶16]   Comment 3 to Rule 1.16 states:

When a lawyer has been appointed to represent a client, withdrawal ordinarily requires approval of the appointing authority. *See also*, Rule 6.2. Similarly, court approval or notice to the court is often required by applicable law before a lawyer withdraws from pending litigation. *See* Rule 102, Uniform Rules for District Courts of the State of Wyoming. Difficulty may be encountered if withdrawal is based on the client's demand that the lawyer engage in unprofessional conduct. **The court may request an explanation for the withdrawal, while the lawyer may be bound to keep confidential the facts that would constitute such an explanation. The lawyer's statement that professional considerations require termination of the representation ordinarily should be accepted as sufficient. Lawyers should be mindful of their obligations to both clients and the court under Rules 1.6 and 3.3.**

W.R.P.C. 1.16 cmt. 3 (emphasis added).

[¶17]   Ms. Austin produced several of her own and other attorney's motions to withdraw containing statements regarding failure to keep appointments and difficulty in communications with the client. The propriety of the other motions is not before the Court. The statements in Ms. Austin's motion were not made in response to a court's request for information but were preemptively provided.

[¶18]   Ms. Austin argues the BPR did not state what specific documents it relied upon in reaching its conclusion that Ms. Johns' alleged failure to cooperate was not public. She asserts this Court should not guess as to what that evidence might be. We need not guess. Two motions to compel discovery in the *Partition Case* and the associated pleadings are in the record. These public documents do not discuss the lack of cooperation by Ms. Johns. Instead, they contain general allegations of deficiencies in Ms. Johns' discovery responses. Motions to compel discovery do not equate to a public statement about an individual litigant's failure to cooperate with his or her attorney. The district court's order granting the motion to compel did not address Ms. Johns' role, if any, in discovery failures. The order stated, "Counsel presented argument which established she had used good faith in [an] attempt to obtain the answers to the Interrogatories." If the discovery failures were

attributable to Ms. Johns, that information was confidential because it had not been previously disclosed to the public.

[¶19] Ms. Austin's disclosure of Ms. Johns' alleged failures to cooperate with discovery were not required by the court. They were not public. Ms. Austin violated Rule 1.6(a) in motions by making statements about Ms. Johns' failure to cooperate with her and/or with discovery.

## B.     Statement That Ms. Johns Contacted a Realtor to Sell the Property

[¶20] Addressing Ms. Austin's statement that Ms. Johns "contacted a realtor to sell the property" in contravention of the stipulated order, the BPR said:

> [Ms. Austin] admitted that [Ms.] Johns did not consent to her revealing any of the information contained within these statements. Rather, at least with respect to the statement about [Ms.] Johns contacting a realtor to sell the property at issue, [Ms. Austin] testified that she was required to inform the Court about the sale of property because a sale, if it occurred, would violate a court order. [She] further asserted that, as the attorney for the estate, she was required to protect the estate's assets.
>
> .     .     .
>
> [Ms. Austin] admitted that [Ms.] Johns did not inform her that she was going to sell the four-plex. [Ms. Austin] made no attempt to independently verify whether [Ms.] Johns contacted a realtor to sell the four-plex. [Ms. Austin] acknowledged her statement that [Ms.] Johns contacted a realtor was known to her only through communications with [Ms.] Johns and related to her representation of [Ms.] Johns. Finally, despite [Ms. Austin's] assertion that she revealed this information, in part, to protect the estate, she made no effort to remove [Ms.] Johns as the personal representative of the estate.

[¶21] Ms. Austin argues this disclosure did not violate Rule 1.6(a) for three reasons. First, it was allowed by W.R.P.C. 1.6(b)(2) (prevent the client from committing a fraud) and (prevent substantial injury to property of another). Second, it was required to be revealed to the Court by W.R.P.C. 3.3 (lawyer who knows a client intends to engage in fraudulent conduct shall take reasonable remedial measures). Third, it was not confidential because it was already available to another member of the public, the real estate agent, Phyllis Gapter.

[¶22] Rule 1.6(b) states in relevant part:

> (b)     A lawyer may reveal such information to the extent the lawyer *reasonably believes necessary*:
>
> .   .   .
>
> (2)     to prevent the client from committing a fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services;[4]
>
> (3)     to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services;[5]
>
> .   .   .
>
> (6)     to comply with other law or a court order[.]

---

[4] Comment 6 to W.R.P.C. 1.6 states:

> Paragraph (b)(2) is a limited exception to the rule of confidentiality that permits the lawyer to reveal information to the extent necessary to enable affected persons or appropriate authorities to prevent the client from committing a fraud, as defined in Rule 1.0(d), that is reasonably certain to result in substantial injury to the financial or property interests of another and in furtherance of which the client has used or is using the lawyer's services. Such a serious abuse of the client-lawyer relationship by the client forfeits the protection of this Rule. The client can, of course, prevent such disclosure by refraining from the wrongful conduct. Although paragraph (b)(2) does not require the lawyer to reveal the client's misconduct, the lawyer may not counsel or assist the client in conduct the lawyer knows is criminal or fraudulent. *See* Rule 1.2(d). *See also* Rule 1.16 with respect to the lawyer's obligation or right to withdraw from the representation of the client in such circumstances, and Rule 1.13(c), which permits the lawyer, where the client is an organization, to reveal information relating to the representation in limited circumstances.

W.R.P.C. 1.6 cmt. 6.

    We note the "Comments do not add obligations to the Rules but provide guidance for practicing in compliance with the Rules." W.R.P.C. Scope cmt. 14.

[5] Paragraph (b)(3) addresses the situation in which the lawyer does not learn of the client's crime or fraud until after it has been consummated. W.R.P.C. 1.6(b)(3).

W.R.P.C. 1.6(b) (emphasis added). Rule 3.3(b) provides: "A lawyer who represents a client in an adjudicative proceeding and *who knows that a person intends to engage*, is engaging or has engaged in criminal or fraudulent conduct related to the proceeding shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal." W.R.P.C. 3.3(b) (emphasis added).

[¶23] Ms. Austin contends the Rules of Professional Conduct required her to act on her reasonable belief that Ms. Johns planned to sell the four-plex in violation of a court order. Rule 1.0(a) defines "'Belief' or 'believes' [as] denot[ing] that the person involved actually supposed the fact in question to be true. A person's belief may be inferred from circumstances." Rule 1.0(i) defines "'Reasonable' or 'reasonably' when used in relation to conduct by a lawyer [as] denot[ing] the conduct of a reasonably prudent and competent lawyer[,]" and Rule 1.0(j) states "'Reasonable belief' or 'reasonably believes' when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable." In contrast, Rule 1.0(g) states "'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances."

[¶24] Ms. Austin testified that she believed Ms. Johns planned to violate a court order by selling the four-plex. She asserted that Ms. Johns told her that she had contacted a realtor after Ms. Austin suggested contacting a property manager to determine the value of the four-plex. When asked if Ms. Johns ever said she was going to sell the property, Ms. Austin, testified:

> Of course not. She just had a hearing. She just signed a stipulated order. Is she going to say, Oh, yeah, never mind. I'm just going to go out there and sell that now. Heck no. No one ever does. No personal representative has ever done that. Not one time. Not one time. I've never had that happen, not one time. Now they may well have stolen something or had the intent to sell it, or, according to the estate planning section that I'm on, yeah, they take off with it all the time. Do you think they're going to make a statement "I'm going to go sell this?" Never.

When asked again if Ms. Johns ever told Ms. Austin she planned to sell the property, Ms. Austin replied:

> She kept asking me to do it. Haranguing me to do it. There's a difference, maybe. To me, there's not. That shows the intent of it. Again, no [personal representative] is going to make a statement. I'm just going to go sell those guns now. That never happens. That's completely unrealistic even, to

10

even ask that question or have that requirement. No. That's not what happens ever. It just simply does not. What do they do instead? They hound you. They ask you. They try to get you to do it.

[¶25] Ms. Austin testified she never contacted the realtor prior to filing her motion to withdraw because she "wasn't sure" which realtor Ms. Johns had contacted. Addressing her reasonable belief that Ms. Johns violated the court order, Ms. Austin stated, "I wasn't sure what she was doing, because she wasn't telling me all what she was doing. But it . . . did appear to me, based on experience and observation, that, yes, that's what she was doing. Or going to do."

[¶26] Ms. Austin called realtor Phyllis Gapter as a witness in support of the reasonableness of her belief that Ms. Johns planned on selling the four-plex. Ms. Gapter testified she had several telephone conversations with Ms. Johns after her father died. Ms. Gapter stated she was an experienced realtor in the Wheatland area and had sold "a couple of [the] same type—same four-plex buildings there in that same area." She summarized her interactions with Ms. Johns:

> [S]he just asked me if I was familiar with the area, and that if she did decide to list it, she wanted to work with me, if she could, but she was wanting to know was I—my opinion as far as what the property was worth. And what kind of rents do they get out of those properties.
>
> .   .   .
>
> [S]he told me . . . it was going to be Brenda [Lockman] and her were the owners of the property. . . . I did tell her at the time that I'd be able to list the property. If it was in both their names, of course, they both had to agree. And I would have to have signatures of both, because they were the sellers. And so . . . that was really as far as that went, as far as listing that.
>
> .   .   .
>
> [E]very time she called me, she was asking basically the same information, and that she wanted me to send information to her attorney. . . . I did tell her what—she wanted to know what rents were for a property like that. And I know that I did give her that information, as far as something in writing . . . and if she wanted to give that to her attorney, she could do that.

11

Ms. Gapter stated Ms. Johns never asked her to list the four-plex and Ms. Lockman never communicated with her.

[¶27]  The record contains evidence of Ms. Johns' frustration that the property could not be sold quickly by a realtor.  However, Ms. Austin presented no evidence to support her belief that Ms. Johns was planning to sell the four-plex or that it would lead a reasonably prudent and competent lawyer to the same conclusion.  Ms. Johns' contacts with Ms. Gapter in October 2020 appear to be an attempt to collect the information that Ms. Austin had requested.  These contacts occurred months before the entry of the February 2021 stipulated order to sell the property through a sheriff's auction.  According to the record, Ms. Austin assumed Ms. Johns was up to no good based on her unfortunate experience with prior clients.  This is simply not enough to support a reasonable belief under Rule 1.6(b).  *See People v. Braham*, 470 P.3d 1031, 1044 (Colo. O.P.D.J. 2017) ("Respondent presented no evidence that the Kellys were committing fraud on the bankruptcy court other than his own suspicions, which appear to be unfounded. . . . Accordingly, we determine that Respondent violated Colo. RPC 1.6(a).").  Ms. Austin's unsupported belief that Ms. Johns intended to sell the property through a realtor did not justify her disclosures.

[¶28]  Ms. Austin also claims that Rule 1.6 does not apply because the information was public.  She asserts Ms. Johns had contacted a real estate agent about selling the four-plex and this was known to the real estate agent, Ms. Gapter.  Even if we were to put aside our conclusion that there is no evidence to support a reasonable belief that Ms. Johns was attempting to sale the four-plex, knowledge by "a" member of the public does not make confidential information public.  As the Massachusetts Court stated:

> Comment 3A to rule 1.6 explains that whether information is "confidential" turns, in part, on whether it is "generally known."  According to that comment, "'[c]onfidential information' does not ordinarily include . . . information that is generally known in the local community or in the trade, field or profession to which the information relates."  The comment then explains that whether information is "generally known" depends primarily on how widespread the information has become:
>
> .    .    .
>
> That the information is available in a public record is not dispositive; rather, the focus is on how many people in the relevant community, trade, field, or profession actually have learned the information.

*Matter of Kelley*, 182 N.E.3d 949, 953 (Mass. 2022).

12

[¶29] Even if Ms. Johns intended to sell the property and Ms. Gapter knew of this intent, Ms. Gapter's knowledge does not make the information generally known to the public.

[¶30] The record contains clear and convincing evidence that Ms. Austin violated Rule 1.6(a).

## II.    Does the record contain clear and convincing evidence that Ms. Austin violated Rule 3.3(a)(1) of the Wyoming Rules of Professional Conduct?

[¶31] Ms. Austin is charged with violating the rule by filing motions to withdraw falsely asserting, "Pursuant to the Uniform Rules for District Courts in the State of Wyoming, the Defendant, Janet Sue Johns, wishes to continue pro se or with other counsel." Rule 3.3(a)(1) of the Wyoming Rules of Professional Conduct states: "A lawyer shall not knowingly: (1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer[.]" We recently examined Rule 3.3(a) in *Hinckley*. There, we said:

> The requirement of honesty is foundational to our judicial system and to our society. "Our adversary system for the resolution of disputes rests on the unshakable foundation that truth is the object of the system's process which is designed for the purpose of dispensing justice. . . . Even the slightest accommodation of deceit or a lack of candor in any material respect quickly erodes the validity of the process." *In re Liotti*, 667 F.3d 419, 429 (4th Cir. 2011).
>
> The first half of this rule proscribes knowingly making a false statement of fact to the court. Rule 1.0(g) states "knowingly" "denotes actual knowledge of the fact in question." Actual knowledge is more than constructive knowledge. The "rule does not permit a violation based on constructive knowledge" or what the attorney "should have known." *In re Kline*, 298 Kan. 96, 125, 311 P.3d 321, 343 (2013).
>
> In the criminal context, we recognize "the ordinary meaning of 'knowingly' is 'with awareness, deliberateness, or intention' as distinguished from inadvertently or involuntarily." *Butz v. State*, 2007 WY 152, ¶ 20, 167 P.3d 650, 655 (Wyo. 2007), *abrogated on other grounds by Granzer v. State*, 2008 WY 118, ¶ 20, 193 P.3d 266, 272 (Wyo. 2008). That definition applies to "knowingly" as used in Rule

13

3.3(a)(1) as well. An attorney violates the rule only when clear and convincing evidence shows he provided false facts to the court with awareness of their falsity. *Att'y Grievance Comm'n of Md. v. Dore*, 433 Md. 685, 703, 73 A.3d 161, 171 (2013).

The second half of the rule requires an attorney who learns that facts he previously presented to the court were false to correct those facts if they are material. The duty to "correct" arises only when an attorney knows that his prior factual statements were false, and they are material to the issue being considered by the court.

*Hinckley*, ¶¶ 36–39, 503 P.3d at 602.

[¶32] Ms. Austin concedes that Ms. Johns did not verbally terminate her representation. Ms. Austin asserts the allegations in Ms. Johns' Bar Complaint "clearly rejected future representation by Ms. Austin, indicating her 'wish' to proceed in an alternate direction." She argues any reasonable attorney would believe that the Bar Complaint was intended to terminate the attorney-client relationship. She asserts Ms. Johns' only options going forward would be to proceed pro se or with another attorney, she informed the court that is what Ms. Johns wished to do. She maintains she did not "knowingly" mislead the courts because "[t]he statement was made in good faith, in the context of all the circumstances and not for improper purposes."

[¶33] The BPR rejected these explanations and found that the evidence clearly demonstrated Ms. Austin knew Ms. Johns did not want her to withdraw and did not terminate her representation.

[¶34] The record contains a series of emails between Ms. Johns and Ms. Austin which reflect that Ms. Johns did not want Ms. Austin to withdraw from representing her. Email chains from November 2020 to March 2021 contain the following exchanges.

November 20, 2020

Ms. Austin to Ms. Johns:

I don't understand your attitude and responses toward me, which are disrespectful. I will be pleased to resign.

Ms. Johns to Ms. Austin:

I will not allow you to resign from this case. I am sorry about you thinking I am disrespectful towards you . . . .

14

Ms. Austin to Ms. Johns:

>It is entirely up to me whether or not I resign; you don't have any control over that.

.  .  .

>We will be picking up the probate case—there is no choice about that, unless you would like to proceed with it on your own.

Three Days Later

Ms. Johns to Ms. Austin:

>I would really appreciate it if you would please finish these cases.

Ms. Austin to Ms. Johns:

>If I decide to resign from the case, I will send a Motion and Order to the court with a copy to you.

>I am very busy; I have clients who cooperate, who are not disrespectful, and who pay their bills. Frankly, there is no motivation to continue to work with you. This email from you is an example of that. . . .

March 24, 2021

Ms. Austin to Ms. Johns:

>This tone of this message is unacceptable. If you wish me to resign, I am pleased to do that.

.  .  .

>I am not interested in being disrespected, again, by you in this process. I am ready to resign and you can proceed with this case pro se.

There is no evidence that Ms. Johns ever accepted Ms. Austin's offer to withdraw or that she indicated a desire to proceed pro se or with other counsel. To the contrary, Ms. Johns' emails clearly reject Ms. Austin's offers to resign and ask her to continue.

[¶35] Ms. Johns' Bar Complaint alleges: "On several occasions Gayla Austin has threatened me that she wanted to resign from this case. I tell her that I have given her over $27,225.00 and she needs to finish this case." There is no allegation she "wished" to terminate Ms. Austin, employ other counsel, or proceed pro se. Despite Ms. Johns' dissatisfaction, she specifically asserted that Ms. Austin needed to finish the case.

[¶36] Eleven days elapsed between the filing of Ms. Johns' Bar Complaint and Ms. Austin's filing of the motions to withdraw. During this time, Ms. Austin did not attempt to contact Ms. Johns or take any action to clarify whether Ms. Johns intended the Bar Complaint to terminate Ms. Austin's representation. Prior to the filing of the motions to withdraw, she did not seek Ms. Johns' consent or provide Ms. Johns notice of her decision.

[¶37] After Ms. Austin filed the motions to withdraw, Ms. Johns emailed Ms. Austin asking:

> Gayla,
>
> Have you been allowed to withdraw from my cases? I need your representation until further notice. Please finish this case up with . . . Brenda Lockman and Janet Johns.

Ms. Austin responded the same day, stating:

> I informed you on April 23, 2021 and several times after that that because you insist on selling the property via a realtor, that I would resign *and I did resign*. The court order allowing me [to] resign was sent to you by me and by the court. I have closed my file.
>
> You should contact other counsel for your representation.

(Emphasis added.)

[¶38] When Ms. Austin filed the motions to withdraw, she told the district court, "Defendant, Janet Sue Johns wishes to continue pro se or with other counsel." Rule 3.1(b) provides in relevant part, "The signature of an attorney constitutes a certificate by him that he has read the pleading, motion, or other court document; that to the best of his knowledge, information, and belief, formed *after reasonable inquiry*, it is well grounded in fact[.]" W.R.P.C. 3.1(b) (emphasis added). When Ms. Austin asserted that Janet Sue Johns wishes

16

to continue pro se or with other counsel, she knew this statement was false. In the email exchanges between Ms. Austin and Ms. Johns, Ms. Johns repeatedly rejected Ms. Austin's offers to withdraw. Ms. Johns' Bar Complaint declared that Ms. Austin needed to finish the case. And after Ms. Austin moved to withdraw, Ms. Johns sent an email asking Ms. Austin to continue as her lawyer. In Ms. Austin's response, she told Ms. Johns that she had resigned ("I did resign"). Ms. Austin's argument—that she had a good faith belief Ms. Johns fired her—is sophism.

> A lawyer who makes false statements, tells half-truths, and otherwise attempts to mislead harms the legal system and the legal profession. The essential aim of our legal system is to seek truth in the pursuit of justice; for a lawyer, all other duties and responsibilities are secondary. Thus, a lawyer who subordinates truth to obtaining a successful outcome for a client or to avoiding personal responsibility undermines the rule of law and erodes public trust and confidence in the legal system. We must demand better from each other.

*Harris v. Bd. of Pro. Resp. of Supreme Ct. of Tennessee*, 645 S.W.3d 125, 139 (Tenn. 2022) (quoting *Matter of Dixon*, 2019-NMSC-006, ¶ 35, 435 P.3d 80, 88).

[¶39]  We conclude clear and convincing evidence demonstrates Ms. Austin violated her duty of candor under Rule 3.3.

**III.**   ***If the charges are supported by clear and convincing evidence, is a sixty-day suspension appropriate discipline for Ms. Austin's actions under Wyoming Rules of Disciplinary Procedure Rule 15(b)(3)(D)?***

[¶40]  Ms. Austin maintains the BPR incorrectly applied aggravating circumstances and failed to apply pertinent mitigating circumstances when it recommended suspension. When the BPR recommends public censure, suspension, or disbarment, the Court reviews the BPR's report and recommended sanctions under the standard provided in W.R.D.P. 15(b)(3)(D) (Rule 15). That rule states:

> (D)   In imposing a sanction after a finding of misconduct by the respondent, *the Hearing Panel shall consider the following factors, as enumerated in the ABA Standards for Imposing Lawyer Sanctions* [(ABA Standards)], which standards shall be applied by the Hearing Panel in determining the appropriate sanction:

17

> (i) Whether the lawyer has violated a duty owed to a client, to the public, to the legal system, or to the profession;
>
> (ii) Whether the lawyer acted intentionally, knowingly, or negligently;
>
> (iii) The amount of the actual or potential injury caused by the lawyer's misconduct; and
>
> (iv) The existence of any aggravating or mitigating factors.

W.R.D.P. 15(b)(3)(D) (emphasis added). *See also* ABA *Annotated Standards for Imposing Lawyer Sanctions*, Standard 3.0 at 125 (Ellyn S. Rosen ed., 2nd ed. 2019); *Bd. of Pro. Resp., Wyo. State Bar v. Mears*, 2018 WY 58, ¶ 43, 418 P.3d 829, 839 (Wyo. 2018).

[¶41]   Rule 15 requires the Court to apply four factors as enumerated in the ABA Standards to determine appropriate sanctions for violations of the Rules of Professional Conduct.  The first Rule 15 factor is a violation of a duty owed to a client, to the public, to the legal system, or to the profession.  Ms. Austin violated the Rules of Professional Conduct.  *See supra* ¶¶ 13–39.

[¶42]   When considering sanctions, we look to the second Rule 15 factor—whether the lawyer acted intentionally, knowingly, or negligently, and the third factor—the actual or potential injury caused by the lawyer's misconduct—and to the ABA Standards.  The ABA Standards define intent, knowledge, and negligence as:

> "Intent" is the conscious objective or purpose to accomplish a particular result.
>
> "Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.
>
> "Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

ABA *Annotated Standards for Imposing Lawyer Sanctions*, *supra* at xxi.

[¶43]   The ABA Standards define "injury" as "harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct.  The level of injury can range from 'serious' injury or 'little or no' injury[.]"  "Potential injury" is "the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct."  *Id.*

[¶44]   ABA Standard 4.2 addresses the "Failure to Preserve the Client's Confidences" and provides:

> Absent aggravating or mitigating circumstances, upon application of the factors set out in [Standard] 3.0, the following sanctions are generally appropriate in cases involving improper revelation of information relating to representation of a client:
>
> 4.21   Disbarment is generally appropriate when a lawyer, with the intent to benefit the lawyer or another, knowingly reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.
>
> 4.22   Suspension is generally appropriate when a lawyer knowingly reveals information relating to the representation of a client  not otherwise lawfully permitted to be disclosed, and this disclosure causes injury or potential injury to a client.
>
> 4.23   Reprimand [i.e., "public censure" under Rule 9(a)(3) of the Wyoming Rules of Disciplinary Procedure] is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes injury or potential injury to a client.
>
> 4.24   Admonition [i.e., "private reprimand" under Rule 9(a)(4)] is generally appropriate when a lawyer negligently reveals information relating to representation of a client not otherwise lawfully permitted to be disclosed and this disclosure causes little or no actual or potential injury to a client.

*Id.*, Standards 4.2–4.24 at 162–71.

[¶45]  The presumptive sanctions for a violation of Rule 3.3 are set out in ABA Standard 6.1 (False Statements, Fraud and Misrepresentation):

> 6.1     False Statements, Fraud, and Misrepresentation
> Absent aggravating or mitigating circumstances, . . . the following sanctions are generally appropriate in cases involving conduct that is prejudicial to the administration of justice or that involves dishonesty, fraud, deceit, or misrepresentation to a court:
>
> 6.11    Disbarment is generally appropriate when a lawyer, with the intent to deceive the court, makes a false statement, submits a false document, or improperly withholds material information, and causes serious or potentially serious injury to a party, or causes a significant or potentially significant adverse effect on the legal proceeding.
>
> 6.12    Suspension is generally appropriate when a lawyer knows that false statements or documents are being submitted to the court or that material information is improperly being withheld, and takes no remedial action, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
>
> 6.13    Reprimand is generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material misinformation is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.
>
> 6.14    Admonition is generally appropriate when a lawyer engages in an isolated instance of neglect in determining whether submitted statements or documents are false or in failing to disclose material information upon learning of its falsity, and causes little or no actual or potential injury to a party, or causes little or no adverse or potentially adverse effect on the legal proceeding.

*Id.*, Standards 6.1–6.14 at 310–35.

[¶46] Ms. Austin knowingly disclosed confidential information relating to her representation of Ms. Johns when she filed her motions to withdraw claiming Ms. Johns

would not cooperate with discovery and planned to sell the property. By asserting that Ms. Johns wished to proceed pro se or with other counsel, Ms. Austin knowingly submitted a false statement to the court that caused injury or potential injury to Ms. Johns. As directed by Rule 15, we apply the ABA Standards. Because Ms. Austin's violation of Rule 1.6 did not cause injury or potential injury to Ms. Johns, ABA Standard 4.24 applies. The presumptive consequence of Ms. Austin's violations is a private reprimand. Because Ms. Austin knowingly submitted a false statement to the court in violation of Rule 3.3 which caused injury or potential injury to Ms. Johns and this action had an adverse or potentially adverse effect on a legal proceeding, the presumptive consequence is suspension under ABA Standard 6.12.

[¶47] We next consider the fourth Rule 15 factor, aggravating or mitigating circumstances. The ABA Standards address generally accepted standards for aggravation and mitigation of punishment in lawyer disciplinary cases "[a]fter misconduct has been established[.]" *Id.*, Standards 9.0–9.1 at 444.

[¶48] *Aggravation*: "Aggravation or aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed." *Id.*, Standards 9.2–9.21 at 451.

[¶49] Aggravating factors include:

  (a)   prior disciplinary offenses;

  (b)   dishonest or selfish motive;

  (c)   a pattern of misconduct;

  (d)   multiple offenses;

  (e)   bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;

  (f)   submission of false evidence, false statements, or other deceptive practices during the disciplinary process;

  (g)   refusal to acknowledge wrongful nature of conduct;

  (h)   vulnerability of victim;

  (i)   substantial experience in the practice of law;

21

(j)     indifference to making restitution;

(k)     illegal conduct, including that involving the use of controlled substances.

*Id.*, Standard 9.22 at 451.

[¶50] *Mitigation*: "Mitigation or mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed." *Id.*, Standards 9.3–9.31 at 487. Mitigating factors which may be considered include:

(a)     absence of a prior disciplinary record;

(b)     absence of a dishonest or selfish motive;

(c)     personal or emotional problems;

(d)     timely good faith effort to make restitution or to rectify consequences of misconduct;

(e)     full and free disclosure to disciplinary board or cooperative attitude toward proceedings;

(f)     inexperience in the practice of law;

(g)     character or reputation;

(h)     physical disability;

(i)     mental disability or chemical dependency including alcoholism or drug abuse when:

    (1)     there is medical evidence that the respondent is affected by a chemical dependency or mental disability;

    (2)     the chemical dependency or mental disability caused the misconduct;

    (3)     the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and

(4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely.

(j) delay in disciplinary proceedings;

(k) imposition of other penalties or sanctions;

(l) remorse;

(m) remoteness of prior offenses.

*Id.*, Standard 9.32 at 487.

[¶51] *Factors which are neither aggravating nor mitigating* are:

(a) forced or compelled restitution;

(b) agreeing to the client's demand for certain improper behavior or result;

(c) withdrawal of complaint against the lawyer;

(d) resignation prior to completion of disciplinary proceedings;

(e) complainant's recommendation as to sanction;

(f) failure of injured client to complain.

*Id.*, Standard 9.4 at 547.

[¶52] The BPR applied the following aggravating factors:

(f) (submission of false evidence, false statements, or other deceptive practices during the disciplinary process);

(g) (refusal to acknowledge wrongful nature of conduct);

(i) (substantial experience in the practice of law); and

(j) (indifference to making restitution) applied to Ms. Austin's actions.

23

[¶53] It applied one mitigating factor, 9.32(a) (absence of a prior disciplinary record). We address Ms. Austin's objections to these findings in turn.

[¶54] Ms. Austin does not object to the applicability of aggravating factor 9.22(i), conceding she has substantial experience in the practice of law. She does object to the applicability of the remaining aggravating factors applied by the BPR. We address the remaining factors separately beginning with factor 9.22(f) (submission of false evidence, false statements, or other deceptive practices during the disciplinary process). The BPR found:

> In the Panel's judgment, [Ms. Austin] was repeatedly and alarmingly untruthful in her testimony before the Panel during her testimony in the two-day hearing, including with respect to when and why she reached the decision to file her Motions to Withdraw and regarding the extent of her communications with [Ms.] Johns during the months leading up to her Motions to Withdraw.

[¶55] Ms. Austin argues:

> Presumably 9.22(f) was applied based upon the Panel's opinion that Ms. Austin provided false and contradictory testimony during the hearing. The only testimony pointed to in the BPR Report was related to Ms. Austin testifying about two reasons for filing her Motions to Withdraw: 1) Complainant Johns' continual push for selling the 4-plex contrary to the Stipulated Order and contacting a Ms. Gapt[e]r; and 2) Complainant Johns' termination of Ms. Austin via the content of the Bar Complaint. Those two reasons have been consistently advanced by Ms. Austin during the entire Bar Complaint investigation up through the hearing.[6] Ms. Austin's bases for filing the Motions to Withdraw have never wavered. But, the BPR report holds that Ms. Austin was not credible because she testified that she had two bases for filing the Motions to Withdraw.

[¶56] Contrary to Ms. Austin's assertion, it was not the nature of her defenses but the substance of those defenses that served as the BPR's basis for applying this aggravating

---

[6] Throughout the majority of the investigation, Ms. Austin advanced only one reason for her withdrawal from Ms. Johns' cases—her belief she had a duty to withdraw based on Ms. Johns' alleged plan to defy a court order. Ms. Austin's email on April 23, 2021, stated she had terminated her representation on that basis. She did not allege that Ms. Johns "fired" her until nine months after the investigation began.

factor. The BPR found that the evidence offered was either not credible or false. *See supra* (Ms. Austin had no basis to believe Ms. Johns intended to sell property, and she knew that Ms. Johns wanted her to continue as counsel).

[¶57]  The record fully supports the application of factor 9.22(f) to Ms. Austin's conduct.

[¶58]  Ms. Austin disputes the application of aggravating factor 9.22(g) (refusal to acknowledge wrongful nature of conduct). She concedes she has refused to acknowledge her conduct was, in any way, wrongful. She argues the application of this factor by the BPR penalizes her for defending the allegations against her and thus violates her due process and first amendment rights. Ms. Austin makes no further argument and does not cite to any authority for this proposition.

[¶59]  "[A]n attorney has the right to defend herself in an attorney disciplinary proceeding without automatically increasing her sanction through the application of *Standards* std. 9.22(g)." *In re Disciplinary Proceeding Against Ferguson*, ¶ 69, 246 P.3d 1236, 1250 (Wash. 2011) (citations omitted). However, "*Standards* std. 9.22(g) applies to an attorney who admits he engaged in the alleged conduct with a client but denies the conduct was wrongful or who 'rationalize[s] improper conduct as an error.'" *Id.* ¶ 70, 246 P.3d at 1250 (quoting *In re Disciplinary Proceeding Against Holcomb*, ¶ 58, 173 P.3d 898, 911 (Wash. 2007) (citing *In re Disciplinary Proceeding Against Kronenberg*, 117 P.3d 1134 (Wash. 2005); *In re Disciplinary Proceeding Against Dynan*, 98 P.3d 444 (Wash. 2004), *as amended on denial of reconsideration* (Nov. 30, 2004))).

[¶60]  Here, Ms. Austin does not deny the statements made in her motions to withdraw. She argues these statements were appropriate despite significant evidence to the contrary. Factor 9.22(g) applies in this case.

[¶61]  Next, Ms. Austin argues that the final decision as to whether she violated any rule remains with this Court and the application of this aggravating factor—failure to acknowledge the wrongful nature of her conduct—should not occur prior to a final decision on whether her actions were wrong. We dispose of Ms. Austin's second argument by pointing out that the BPR is statutorily authorized to present a report and recommendation determining, in the first instance, the existence of a violation of a rule and then to determine the appropriate sanction if such a violation exists. *See* W.R.D.C. 15(b)(3)(D).

[¶62]  Ms. Austin objects to the application of aggravating factor 9.22(j) (indifference to making restitution). She asserts restitution was never requested or ordered and relies on our holding in *Hinckley*, where we said:

> The record does not support the BPR's finding that Mr. Hinckley was indifferent toward making restitution, as no restitution from Mr. Hinckley was requested or ordered. The

> BPR made no effort to explain how it was appropriate to assign
> that aggravating factor when it did not make a restitution order.

*Hinckley*, ¶ 93, 503 P.3d at 616. We need not determine whether our statements in *Hinckley* go so far as to hold this aggravating factor can be considered *only* when the BPR has issued a restitution order. Here, Ms. Austin paid a $5,000.00 settlement in a separate fee arbitration. In other words, Ms. Austin was compelled to repay some of her fees. ABA Standard 9.4(a) states "forced or compelled restitution" is "neither aggravating nor mitigating." The application of 9.22(j) is not warranted.

[¶63] Ms. Austin claims the BPR should have applied three mitigating factors 9.32(d), (e), and (g).

[¶64] Ms. Austin claims the mitigating factor found in 9.32(d) (good faith effort to make restitution or to rectify consequences of misconduct) applies because "Ms. Austin unilaterally reimbursed [Ms.] Johns approximately $5,000.00, even though restitution was not an issue in this matter." The BPR responds that this mitigating factor does not apply because Ms. Austin agreed to pay $5,000.00 only after Ms. Johns filed a petition for fee arbitration.

[¶65] Ms. Austin is not entitled to mitigation for restitution. *See supra* ¶ 62.

[¶66] Ms. Austin claims the BPR should have applied factor 9.32 (e) (cooperative attitude toward proceedings) because there is no evidence she did not cooperate through the entire proceeding. Ms. Austin does not address her attitude toward the proceeding. The BPR acknowledges that Ms. Austin supplied responses and documentation pursuant to the BPR's request. Throughout the investigation and hearing, Ms. Austin provided contradictory statements and testimony. She openly expressed outrage at having to respond to the investigation stating, "This [BPR Complaint] is an unmitigated attack on me[,]" Ms. Johns' allegations are "flat out lie[s]" and "blatant falsehood[s,]" and "I believe [Ms. Johns'] complaints constitute slander and libel against me because there is no basis in fact on any of her allegations, yet she is being allowed to continue to complain and no rule violation is cited." This mitigating factor does not apply.

[¶67] Ms. Austin argues mitigating factor 9.32(g) (character or reputation) should be automatically applied in any case where "there [is] no evidence . . . that place[] [Respondent's] character or reputation into question." She asserts there was no such evidence here, and therefore, this mitigating circumstance should have been applied. We find no support for the "automatic" application of a mitigating standard in the law and Ms. Austin provides none. We reject this contention. The record is devoid of evidence—positive or negative—on Ms. Austin's character and reputation. This factor does not apply on the record before us.

[¶68] Ms. Austin knowingly violated Rules 1.6 and 3.3 of the Wyoming Rules of Professional Conduct. Her false statements to the court in violation of Rule 3.3 caused injury or potential injury to Ms. Johns and to the legal system. Three of the aggravating factors and one of the mitigating factors identified by the BPR and set out in the ABA Standards apply to her actions—submission of false evidence, false statements, or other deceptive practices during the disciplinary process; refusal to acknowledge wrongful nature of conduct; substantial experience in the practice of law; and the mitigating absence of a prior disciplinary record. Suspension is the appropriate sanction.

## *DISCIPLINARY ORDER*

[¶69] Ms. Austin violated Rules 1.6 and 3.3 of the Wyoming Rules of Professional Conduct. The formal charge under Rule 1.16 is dismissed. The aggravating factors under ABA Standards 9.22(f), (g), and (i) apply to Ms. Austin's conduct while 9.22(j) is not applicable. The mitigating factors under ABA Standards 9.32(d), (e), and (g) do not apply. Ms. Austin is suspended from the practice of law for sixty days beginning January 1, 2024. Ms. Austin shall comply with the requirements of the Wyoming Rules of Disciplinary Procedure during her suspension and reimburse the Wyoming State Bar $4,316.06 in costs and $750.00 in administrative fees, for a total of $5,066.06 to be paid on or before March 1, 2024. A copy of this Opinion shall be published in the Wyoming Reporter and Pacific Reporter, and the Clerk of Court shall cause a copy of this opinion to be served on Gayla K. Austin.