**Carl O. CARLSON, Jr., Petitioner,**

v.

**Honorable John LANGDON, Judge of the District Court of the Eighth Judicial District, Respondent.**

No. 87–133.

Supreme Court of Wyoming.

Feb. 26, 1988.

Paul B. Godfrey, Godfrey, Sundahl & Jorgenson, Cheyenne, for petitioner.

Michael E. Warren, Sawyer, Warren & Kautz, Torrington, for respondent.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

## ORDER REVERSING RULING WHICH DENIED DISQUALIFICATION OF ATTORNEY AND ORDER DISQUALIFYING ATTORNEY

This case came on before the court upon the Petition for a Writ of Prohibition or in the Alternative for Writ of Certiorari or Other Relief filed in this court on May 26, 1987; the order which this court entered on June 10, 1987, directing the preparation and certification of a record for review pursuant to the power of this court to grant certiorari and staying further proceedings in the district court; the Response Brief to Petition for a Writ of Certiorari, filed herein on July 24, 1987 on behalf of the Respondent; the Reply Brief of Petitioner, Carl O. Carlson, Jr., filed in this court on July 31, 1987; and the oral arguments on behalf of the parties heard on August 27, 1987, and the court, having considered the file and record of the court, the several pleadings described above and the arguments of the parties, finds that:

The court granted the writ of certiorari to consider whether the District Court of the Eighth Judicial District erred in denying a motion to disqualify an attorney from representing a defendant in a pending case. The pending case concerned a lease by the petitioner, Carl O. Carlson, Jr., of certain farm lands owned by his mother, Leva Carlson. Carl Carlson had leased, resided upon and conducted farming and ranching operations on the land since, at least, the death of his father in 1971. In 1973, Carl Carlson determined that it was necessary to make certain improvements on the land to make the farming operations profitable. Leva Carlson agreed to Carl Carlson's request for the improvements, but she was financially unable to provide the necessary funds. Carl Carlson agreed to furnish the funds for the improvements, provided that his interest was protected. The record is not clear as to which of the Carlsons engaged A.B. to draft the agreement for them. Both Carl Carlson and Leva Carlson were present when A.B. was consulted to draft the agreement to implement their intentions with respect to the improvements. Carl Carlson had used the services of A.B. on several occasions prior to the drafting of the 1973 agreement, and, apparently, Leva Carlson also had consulted A.B. on several occasions. Carl Carlson testified that, when the 1973 agreement was drafted, he considered A.B. to be the attorney for both Leva Carlson and himself. Because of this, they mutually sought A.B.'s assistance for the purpose of formalizing their agreement. A.B. represented Carl Carlson on several occasions following the preparation of the 1973 agreement, including matters relating to the land leased from Leva Carlson.

Leva Carlson had an unsecured note at the Citizens National Bank & Trust Co. (Citizens). On January 4, 1985, Citizens wrote a letter to Leva Carlson advising her that it had reviewed the loan and other documents, including her agreement to sell the land to Carl Carlson. Citizens noted a poor record of repayment and the unsecured position that it held, and it advised Leva Carlson to pursue one of three alter-

native courses of action prior to the due date of the note which was March 11, 1985. One of those courses of action was that Leva Carlson sell the farm to pay Citizens. This was the course of action chosen by Leva Carlson. To accomplish the sale, she consulted a second attorney, C.D., who advised Carl Carlson that Leva Carlson intended to terminate the lease and that the provisions of the 1973 agreement would be invoked.

Upon being contacted by C.D., Carl Carlson again consulted A.B. about the legal effect of the 1973 agreement, and whether it permitted Leva Carlson to terminate the lease. A.B. advised Carl Carlson:

"It appears that your mother's position is correct that if the lease terminates then the option provided in Paragraph 3 on the death of your mother is cancelled. I suppose it could be argued that you have not ceased to rent the above-described property on your own volition, but I am not certain that would carry any weight in the court or is what was intended. "I don't have a copy of any lease agreement, so before I write to * * * [C.D.], I would ask that you drop by a copy of the lease so I can read it since it becomes important in evaluating the commencement or termination of certain rights under the agreement."

In a second letter, A.B. stated that, after reviewing the lease agreement, it was his opinion that the stance adopted by C.D. on behalf of Leva Carlson was correct and that Leva Carlson could terminate the lease.

Carl Carlson then consulted a law firm in a different town about his rights. After reviewing the situation, E.F., one of the attorneys in the new firm, filed an action in which both Leva Carlson and Citizens were named as defendants. The complaint alleged that the defendants maliciously had conspired to interfere with the contractual relationship between Leva Carlson and Carl Carlson, and that, by their actions, they intentionally had inflicted emotional distress upon Carl Carlson. In addition, the complaint requested the court to declare that, under the terms of the lease, Leva Carlson could not terminate the lease, except in the event of her death. C.D., for Leva Carlson, answered the complaint, denying the several allegations and asserting counterclaims for affirmative relief. A.B., the attorney who prepared the 1973 agreement and furnished advice with respect to its legal effect to Carl Carlson, appeared and answered on behalf of Citizens.

Concerned with a possible conflict of interest because of A.B.'s representation of Citizens, E.F., on behalf of Carl Carlson, requested A.B. to withdraw from the case. A.B. refused, advising that he did not perceive a conflict of interest to be present, unless he were called as a witness in the case, in which event he would withdraw. He further advised that, according to his records, the preparation of the 1973 agreement was accomplished for Leva Carlson only and that he had obtained her consent to represent Citizens in the case. Following this advice, Carl Carlson filed a motion in the district court requesting A.B.'s disqualification. The court set the motion for hearing, and Carl Carlson testified about his relationship with A.B. In the course of the hearing, the district court stated that it considered the matter of payment for A.B.'s services "of utmost importance." Carl Carlson contended that he, in fact, had paid for A.B.'s services in drafting the 1973 agreement, but the corroborating evidence he presented was a check to Leva Carlson which he testified was, in part, to pay for A.B.'s services in the drafting of that agreement. Carl Carlson could not produce any corroborating evidence to establish that he paid A.B. for advice in the two letters relating to his rights under the 1973 lease agreement.

The district court denied the motion for disqualification. Four grounds were articulated for that denial: first, the court advised that it was reluctant to involve itself in disputes among attorneys; second, the court stated that there was doubt that A.B. had represented Carl Carlson formerly because of the absence of evidence of payment for services in connection with the 1973 agreement; third, the court articulated doubt that any confidential information was disclosed with respect to the prep-

aration of the 1973 agreement, assuming arguendo that an attorney-client relationship did exist; and fourth, the district court stated that it would apply the parol evidence rule with respect to the agreements which made it likely that A.B. would not be permitted to testify in the case. The court did say that if A.B. were called to testify it would entertain a disqualification motion at the trial. Carl Carlson then sought relief in this court pursuant to a petition for a writ of prohibition or in the alternative a writ of certiorari.

■ This court concluded that it was appropriate to review the question presented pursuant to the petition for writ of certiorari. A.B.'s representation of Citizens in the action pending in the district court is contrary to Rule 1.9 of the Rules for Professional Conduct for Attorneys at Law, and the district court erred in not granting the motion to disqualify A.B. A.B. should be disqualified from representation of Citizens in the pending action. Our conclusion that disqualification of A.B. is required by this rule makes it unnecessary to address other arguments asserted on behalf of Carl Carlson to support his claim of error.

■ Rule 1.9 of the Wyoming Rules for Professional Conduct for Attorneys at Law provides:

"A lawyer who has formally represented a client in a matter shall not thereafter:

"(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation except that when the former client is a governmental entity, consent is not permitted; or

"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known."

A.B. contends that there is no violation of Rule 1.9, W.R.P.C., because the record does not support formal representation of Carl Carlson by A.B. Reliance is placed upon the absence of evidence to refute A.B.'s records demonstrating that Carl Carlson did not pay for the services in connection with the preparation of the 1973 agreement or for any advice which was furnished pertaining to that agreement. Payment may be an important consideration, but it is not essential to the existence of an attorney-client relationship, especially for purposes of applying Rule 1.9, W.R.P.C. This court said in *Chavez v. State*, Wyo., 604 P.2d 1341, 1346, cert. denied 446 U.S. 984, 100 S.Ct. 2967, 64 L.Ed.2d 841 (1980):

"* * * [F]ormality is not an essential element of employment of an attorney. Although the attorney-client relationship ordinarily rests on contract, the contract need not be an express one. It may be implied from the conduct of the parties, such as the giving of advice or assistance, or such as failing to negate the relationship when the advice or assistance is sought if the attorney is aware of the reliance on the relationship. The general rules of agency apply to the establishment of the relationship. Whether the relationship exists depends on the facts and circumstances of each case."

See also *Matter of McGlothlen*, 99 Wash. 2d 515, 663 P.2d 1330, 1334 (1983) ("An attorney-client relationship does not require the payment of a fee or formal retainer but may be implied from the conduct of the parties."); 7 Am.Jur.2d *Attorneys at Law* § 118 at 188 (1980) (The attorney-client relationship is not dependent on a fee or formal contract but may be implied from the conduct of the parties.); The Bureau of National Affairs, Inc., Lawyer's Manual on Professional Conduct §§ 31:101—31:104 (1984).

■ The facts in this instance demonstrate the existence of a formal attorney-client relationship by implication. Both Carl Carlson and Leva Carlson consulted A.B., who was considered to be the family attorney, in formalizing the 1973 agreement. There is nothing to indicate that A.B. in any way dispelled Carl Carlson's belief that A.B. was representing both Carl Carlson and Leva Carlson. There is nothing to indicate that A.B. informed Carl Carlson that A.B. was representing Leva

Carlson only and that Carl Carlson should seek separate counsel to protect his interest. A.B. contended otherwise at the hearing, but no evidence was presented to demonstrate that the advice given Carl Carlson in the two letters was not furnished in the relationship of an attorney and his client. A.B. provided an opinion as to the legal effect of the document and suggested that he would write to C.D., Leva Carlson's attorney, concerning Carl Carlson's rights under the 1973 agreement. The existence of the attorney-client relationship is not abrogated by the lack of evidence of payment for A.B.'s services.

The interest served by Rule 1.9, W.R. P.C., is the protection of confidentiality. In that context, an attorney-client relationship is of particular importance, but it is inappropriate in applying this Rule of Professional Conduct to place emphasis on the existence of a formal contractual relationship. The contention that a formal contractual relationship is required assumes that the client will not disclose confidential information to an attorney, with whom he is consulting, until a formal contract has been prepared or until he agrees to a specified fee for the services. The burden of proof to show that it was unreasonable for a client to believe that an attorney-client relationship existed and that the information disclosed will be kept in confidence and not used against him later has to rest with the attorney. A.B. did not demonstrate any effort to dispel Carl Carlson's understanding, and it was reasonable for Carl Carlson to believe that the attorney-client relationship existed. The absence of evidence of payment for the services does not permit us to ignore the provisions of Rule 1.9, W.R.P.C.

■ In its ruling, the trial court further indicated that disqualification was not required because, even if it assumed the existence of the attorney-client relationship, there was nothing to show that any confidential information had been communicated. Rule 1.9, W.R.P.C., and the cases out of which it evolved, do not require any showing of disclosure of confidential information. The correct interpretation is that the communication of confidential information is presumed once a showing is made that the matter in which an attorney formerly provided representation is substantially related to matters in the pending action. See 7A C.J.S. *Attorney and Client* § 160 at 230–232 (1980), and cases cited therein; The Bureau of National Affairs, Inc., Lawyer's Manual on Professional Conduct, supra, §§ 51:204–51:206. In the seminal case of *T.C. Theatre Corporation v. Warner Brothers Pictures, Inc.*, 113 F.Supp. 265, 268–269 (S.D.N.Y.1953), Judge Weinfeld articulated the correct principle and its justification:

"I am not in accord with Mr. Cooke that Universal is required to show that during the Paramount litigation it disclosed matters to him related to the instant case. Rather, I hold that the former client need show no more than that the matters embraced within the pending suit wherein his former attorney appears on behalf of his adversary are substantially related to the matters or cause of action wherein the attorney previously represented him, the former client. The Court will assume that during the course of the former representation confidences were disclosed to the attorney bearing on the subject matter of the representation. I will not inquire into their nature and extent. Only in this manner can the lawyer's duty of absolute fidelity be enforced and the spirit of the rule relating to privileged communications be maintained."

The cases are divided as to whether the presumption manifested in this rule is rebuttable and further whether a second stage (that is the communication of confidential information to other members of the attorney's law firm) presumption of imputed knowledge is rebuttable. The Bureau of National Affairs, Inc., Lawyer's Manual on Professional Conduct, supra, §§ 51:206–51:207. The majority rule is that the presumption of disclosure is not rebuttable when the interests of the previous client are adverse to a client whom the attorney now is representing. See *Smith v. Whatcott*, 757 F.2d 1098 (10th Cir.1985), and cases cited therein. See also 7A C.J.S.

*Attorney and Client,* supra, and cases cited therein. The irrebuttable presumption with respect to the individual attorney offers greater assurance that confidential information will be protected and assists in avoiding any appearance of impropriety. It also protects the former client from disclosing the very confidential information he seeks to protect in order to establish justification for disqualification in the later proceeding. We adopt the rule of irrebuttable presumption with respect to the individual attorney even though we recognize that disqualification of an attorney may prevent another client from obtaining the services of the attorney of his choice. Because of this interest of the later client, we choose not to carry the irrebuttable presumption any further than necessary, and while that is not this case, we would not adopt a second-stage irrebuttable presumption in cases involving imputed knowledge. See *Smith v. Whatcott,* supra; *Cheng v. GAF Corporation,* 631 F.2d 1052 (2d Cir.1980), vacated by *GAF Corporation v. Cheng,* 450 U.S. 903, 101 S.Ct. 1338, 67 L.Ed.2d 327 (1981). But see *In re Corrugated Container Antitrust Litigation,* 659 F.2d 1341 (5th Cir.1981); *State of Arkansas v. Dean Food Products Company, Inc.,* 605 F.2d 380 (8th Cir.1979), overruled on other grounds, *In re Multi–Pierce Rim Products Liability Litigation,* 612 F.2d 377 (8th Cir. 1980), vacated sub nom. *Firestone Tire & Rubber Company v. Risjord,* 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

It is consistent with the application of an irrebuttable presumption to focus the inquiry, pursuant to Rule 1.9, W.R.P.C., not on whether confidential information was disclosed but instead on whether the matters are related in some substantial way. The comment on Rule 1.9, W.R.P.C., discloses that the true purpose of this rule is to protect confidential information. For this reason, the rule as couched encompasses merely a requirement that the matters be related in a substantial way.

■ In determining the question of substantial relationship, two approaches have been taken by courts. Under one approach, the issues of the two cases are examined to determine whether there are common issues. See *In re Corrugated Container Antitrust Litigation,* supra; *Government of India v. Cook Industries, Inc.,* 569 F.2d 737 (2d Cir.1978); *City of Cleveland v. Cleveland Electric Illuminating,* 440 F.Supp. 193 (N.D.Ohio 1971) affirmed 573 F.2d 1310 (6th Cir.1977), cert. denied 435 U.S. 996, 98 S.Ct. 1648, 56 L.Ed. 2d 85 (1978). This approach has been criticized because issues frequently do not develop until long after litigation has been instituted. *General Electric Corporation v. Valeron Corporation,* 608 F.2d 265 (6th Cir.1979), cert. denied 445 U.S. 930, 100 S.Ct. 1318, 63 L.Ed.2d 763 (1980). The other approach, which we adopt, is to determine whether in the factual context the matters involving the two clients are related in some substantial way. See *Smith v. Whatcott,* supra; *Kevlik v. Goldstein,* 724 F.2d 844 (1st Cir.1984); *Trust Corporation of Montana v. Piper Aircraft Corporation,* 701 F.2d 85 (9th Cir.1983). If the two matters have common facts, the attorney is in a position to receive confidential information which possibly could be used to the detriment of the former client in the later proceeding. *Trust Corporation of Montana v. Piper Aircraft Corporation,* supra. See also *Kevlik v. Goldstein,* supra.

■ The record in this case demonstrates that the factual context of the pending action has a substantial relationship to matters which were of concern in the drafting of the 1973 agreement and the letters addressed from A.B. to Carl Carlson with reference to that agreement. That prior representation and A.B.'s representation of Citizens in the pending action were both concerned with the existence, content and effect of the 1973 agreement. Even though the district court stated that testimony from A.B. probably would not be admitted because of the parol evidence rule, the intent of the parties, as it was captured in the 1973 agreement, was important in the prior representation and is important in the pending case. Because there is a common factual relationship in the two matters, we must assume the disclosure of confidential information from Carl Carlson to A.B. That assumption

makes it inappropriate for A.B. to represent any interest contrary to Carl Carlson in the present action, without first obtaining Carl Carlson's consent. It is clear, and no claim is made, that A.B. is not representing an adverse interest in this case, and no claim is made of consent by Carl Carlson. It is for these reasons that A.B.'s representation of Citizens in this pending case violates Rule 1.9, W.R.P.C., and the district court erred in not granting the motion for disqualification.

Contrary to the intimations reflected in the decision of the district court in this instance, a trial court is charged with the responsibility of supervising the conduct of attorneys practicing before it. That responsibility includes a duty to disqualify an attorney when it is appropriate. *Kevlik v. Goldstein*, supra; *Redd v. Shell Oil Company*, 518 F.2d 311 (10th Cir.1975). The decision of the trial court in such an instance should be reversed only when an abuse of discretion is demonstrated. *Kevlik v. Goldstein*, supra; *Cheng v. GAF Corporation*, supra; *City of Cleveland v. Cleveland Electric Illuminating*, supra; but see *Cossette v. Country Style Donuts, Inc.*, 647 F.2d 526 (5th Cir.1981); *General Electric Company v. Valeron Corporation*, supra (applying a clearly erroneous standard). We are satisfied that, under the facts of this case, there was an abuse of discretion on the part of the trial court in refusing to disqualify counsel.

■ We pursued review pursuant to writ of certiorari in this case because the decision of the trial court with respect to disqualification of an attorney does not dispose of the merits of any pending claims and, for that reason, does not present a final order subject to appeal. Rule 1.05, W.R.A.P.; *Kimbley v. City of Green River*, Wyo., 663 P.2d 871 (1983); *Public Service Commission v. Lower Valley Power & Light, Inc.*, Wyo., 608 P.2d 660 (1980). In the federal arena, some courts had determined that even though a disqualification ruling was not a final order, the important considerations raised justified review under the collateral order doctrine developed in *Cohen v. Beneficial Industrial*

*Loan Corporation*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed.2d 1528 (1949). See *Melamed v. ITT Continental Baking Company*, 592 F.2d 290 (6th Cir.1979) (Melamed II), overruling *Melamed v. ITT Continental Baking Company*, 534 F.2d 82 (6th Cir.1976) (Melamed I), and cases cited therein. In *Firestone Tire & Rubber Company v. Risjord*, 449 U.S. 368, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981), the Supreme Court of the United States resolved a division among the federal courts as to the finality of a denial of motions for disqualification holding that a decision to deny a disqualification motion was not appealable until the case had been resolved on its merits. The court specifically did not decide whether a motion granting disqualification would be a final order under the doctrine of *Cohen v. Beneficial Industrial Loan Corporation*, supra. Policy considerations involved in the granting of the disqualification motion (see *Armstrong v. McAlpin*, 625 F.2d 433 (2d Cir.1980) has led several courts to conclude that an appeal should be entertained from an order granting the disqualification of an attorney. See *EZ Paintr Corporation v. Padco, Inc.*, 746 F.2d 1459 (Fed.Cir.1984); *In re Corrugated Container Antitrust Litigation*, supra.

The question which this case presents is a serious and unsettled question in Wyoming jurisprudence. In view of what we have articulated, it is obvious that waiting until the conclusion of the case on the merits would not have been beneficial to the parties and could have resulted in injustice. Consequently, we exercise our discretion to review the question pursuant to the writ of certiorari. A writ of certiorari is even more appropriate because the question concerns an abuse of the trial court's discretion. See *City of Sheridan v. Cadle*, 24 Wyo. 293, 157 P. 892 (1916); 14 Am. Jur.2d *Certiorari* § 11 at 788 (1964), and the cases cited therein. Furthermore, we also are charged with the responsibility of supervising the conduct of members of the Wyoming State Bar; and it therefore is

ORDERED that the ruling of the district court denying the disqualification of A.B. as counsel for Citizens is reversed; and it further is

ORDERED that A.B. is disqualified from representation of Citizens in the case of Carl O. Carlson, Jr. v. E. Leva Carlson and Citizens National Bank & Trust Co., Civil No. 23–24, in the District Court of the Eighth Judicial District in and for Goshen County, and a separate, specific, non-anonymous order shall issue to that effect.