# THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 46

APRIL TERM, A.D. 2024

April 26, 2024

ANDREA L. RICHARD, WSB NO. 5-2848,

Petitioner,

v.

BOARD OF PROFESSIONAL
RESPONSIBILITY, WYOMING STATE
BAR,

Respondent.

S-23-0155

*Original Proceeding for Attorney Discipline*

***Representing Petitioner:***
   *Patrick J. Murphy of Williams, Porter, Day & Neville, P.C., Casper, Wyoming.*

***Representing Respondent:***
   *Mark W. Gifford, Bar Counsel, Wyoming State Bar.*

***Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY, and FENN, JJ.***

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third.  Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]     Andrea Richard moved the Review and Oversight Committee (ROC) to disqualify Special Bar Counsel Wes Reeves and the Office of Bar Counsel from prosecuting the pending disciplinary proceeding against her due to a conflict of interest.  She sought the appointment of a new, conflict-free special bar counsel.  The ROC disqualified Mr. Reeves but declined to impute his conflict of interest to the Office of Bar Counsel.  After the ROC determined there was probable cause to allow Bar Counsel to file a formal charge, Ms. Richard asked the hearing panel for the Board of Professional Responsibility (BPR) to disqualify the Office of Bar Counsel due to an additional conflict of interest that was unknown to her at the time she filed her first motion and because Bar Counsel used Mr. Reeves's work product when drafting the formal charge.  The BPR denied Ms. Richard's motion. We granted Ms. Richard's petition to review the BPR's order.  We conclude the Office of Bar Counsel must be disqualified due to existing conflicts of interest, and we reverse with instructions to appoint a new, conflict-free special bar counsel.

## ISSUES

[¶2]     The issues are:

> I.   Is the current disciplinary proceeding substantially related to Ms. Richard's 2014 suspension and subsequent reinstatement in 2017?
>
> II.  Do conflicts of interest within the Office of Bar Counsel mandate the appointment of a new, conflict-free special bar counsel to prosecute the current disciplinary proceeding?

## FACTS

[¶3]     From 2006 through 2012, the Office of Bar Counsel investigated Ms. Richard's alleged violations of the Rules of Professional Conduct in seven different court cases, ultimately consolidating them into a single disciplinary proceeding. *Bd. Pro. Resp., Wyo. State Bar v. Richard*, 2014 WY 98, ¶ 2, 335 P.3d 1036, 1039–40 (Wyo. 2014).  During the investigation into one of those seven cases, *Fields v. Waterhouse*, Ms. Richard was briefly represented by Mr. Wes Reeves.[1]  Mr. Reeves's representation consisted of writing letters to then Bar Counsel, Ms. Rebecca Lewis, asserting Ms. Richard's conduct in that matter did not constitute a violation of the Rules of Professional Conduct.  Ultimately, this Court adopted the BPR's report and recommendation finding Ms. Richard committed multiple

---

[1] Mr. Reeves also represented Ms. Richard in her divorce proceeding in 2010–11.  Although there are no pending matters in that case, he never officially withdrew from that representation.

rule violations when she forced opposing parties to file repeated motions to compel discovery, failed to comply with court orders to provide meaningful discovery, caused unnecessary delay and needlessly increased the costs of litigation, filed pleadings that were not well grounded in fact or warranted by good faith argument, made allegations in court documents that were not true, and made repeated misrepresentations concerning discovery and other matters. *Id.* at ¶¶ 55–69, 335 P.3d at 1052–55. In 2014, this Court suspended Ms. Richard from the practice of law for three years (the "2014 Suspension"). *Id.* at ¶ 81, 335 P.3d at 1063.

In 2017, Ms. Richard petitioned for reinstatement (the "2017 Reinstatement"). She was represented by Mr. Steve Kline and Ms. Melinda McCorkle.[2] During this representation, Ms. McCorkle was made privy to private information such as Ms. Richard's counseling records, medical records, and other information regarding Ms. Richard's rehabilitation efforts. The Office of Bar Counsel, then represented by Mr. Mark Gifford, stipulated to Ms. Richard's reinstatement.

[¶4]    In December 2021, the current disciplinary proceeding began when the Office of Bar Counsel received complaints from two of Ms. Richard's clients, M.M. and C.S. These complaints were assigned case numbers BPR 2021-119 and BPR 2021-120, and they involve accusations of filing insufficient pleadings, making misrepresentations to the district court, using improper billing practices, and lack of client communication. Although Ms. McCorkle was now working as Deputy Bar Counsel, neither she nor Mr. Gifford notified Ms. Richard of Ms. McCorkle's employment with the Office of Bar Counsel. They did not seek Ms. Richard's consent for Ms. McCorkle to have any role in the investigation or prosecution of these complaints nor did they provide notice of any procedures they implemented to ethically screen Ms. McCorkle from participating in the current disciplinary proceeding.

[¶5]    In September 2022, the Office of Bar Counsel received an additional complaint about Ms. Richard from Judge Radda, which included a copy of an order he entered imposing Rule 11 sanctions against Ms. Richard. This complaint was assigned case number BPR 2022-096, and it involves allegations Ms. Richard made claims in a pleading that had no basis in fact. Also in September 2022, the Office of Bar Counsel received an additional complaint about Ms. Richard from Judge Owens, which included a report and recommendation from Judge Haws. This complaint was assigned case number BPR 2022-101, and it involves allegations of intentional discovery abuse. Mr. Gifford wrote letters to Ms. Richard regarding these complaints and she responded.

[¶6]    In November 2022, Mr. Gifford informed Ms. Richard that Mr. Reeves and Ms. Anna Reeves Olson were appointed to serve as Special Bar Counsel in the present

---

[2] Mr. Kline and Ms. McCorkle also represented Ms. Richard in a malpractice action relating to one of the cases from the 2014 Suspension, *Sterrett v. Big D*.

disciplinary proceeding. This correspondence indicated Mr. Gifford was aware Mr. Reeves previously represented Ms. Richard in connection with the 2014 Suspension, but Mr. Gifford determined Mr. Reeves did not have a conflict of interest and could serve as Special Bar Counsel. Mr. Reeves did not notify Ms. Richard of any potential conflict prior to accepting the representation, nor did he seek her consent before accepting the representation.

[¶7]   On February 14, 2023, Special Bar Counsel Reeves sought the ROC's permission to file a formal charge against Ms. Richard. On March 10, 2023, Ms. Richard's counsel asked the ROC to disqualify Mr. Reeves and his firm because Mr. Reeves had a conflict of interest under Rule 1.9[3] of the Wyoming Rules of Professional Conduct (W.R.P.C.). Mr. Gifford objected to this request, asserting Mr. Reeves had no such conflict because the new disciplinary proceeding was not the same or substantially related to the 2014 Suspension in which Mr. Reeves represented Ms. Richard.

[¶8]   The ROC disqualified Mr. Reeves and Ms. Olson from serving as Special Bar Counsel finding Mr. Reeves's prior representation was "either a conflict of interest, or at the very least the appearance of a conflict of interest, such that Special Bar Counsel cannot continue on in this matter." The ROC did not impute Mr. Reeves's conflict to the Office of Bar Counsel.

[¶9]   In April 2023, Ms. Richard filed a second request to disqualify the Office of Bar Counsel. This motion asked the ROC to find Ms. McCorkle had a conflict of interest under W.R.P.C. 1.9, and the Office of Bar Counsel's failure to put ethical screening measures in place pursuant to W.R.P.C. 1.10 required this conflict to be imputed to the entire Office of Bar Counsel. The ROC denied this motion, finding it no longer had jurisdiction to consider it because it had already made a determination probable cause existed to allow Mr. Gifford to file a formal charge against Ms. Richard. Mr. Gifford filed the formal charge against Ms. Richard that same day.

[¶10]  After Bar Counsel filed the formal charge with the BPR, Ms. Richard filed another motion to disqualify the Office of Bar Counsel based on the conflicts of Mr. Reeves and Ms. McCorkle. Ms. Richard alleged the Office of Bar Counsel never screened or handled these conflicts properly, which meant these conflicts had to be imputed to the Office of Bar Counsel. She asked the BPR to disqualify the Office of Bar Counsel and appoint a new special bar counsel. Ms. Richard also filed a motion asking the BPR to prohibit the Office of Bar Counsel from turning over any work product to any newly appointed special bar counsel.

---

[3] Although certain amendments to W.R.P.C. 1.9 became effective on April 15, 2024, those amendments are not relevant to this appeal.

[¶11]  Mr. Gifford responded to Ms. Richard's motion to disqualify his office by arguing the current disciplinary proceeding was not the same or substantially related to the 2014 Suspension or the 2017 Reinstatement.  The crux of his argument was that the three proceedings did not involve the same transaction or legal dispute.

[¶12]  The BPR denied Ms. Richard's motion to disqualify the Office of Bar Counsel and her motion for an order prohibiting the turnover of work product.  The BPR found Ms. McCorkle did not have a conflict of interest under W.R.P.C. 1.9 reasoning: "the events that resulted in the 2014 [S]uspension and the 2017 [R]einstatement are in no way related to or in any way the same or substantially related to those at issue in this matter.  The persons and the alleged facts are completely different and in no way related to earlier events."  For those same reasons, the BPR found Mr. Reeves "did not and does not now" have any conflict of interest that would require the disqualification of the Office of Bar Counsel or a restriction on access to work product.

[¶13]  Ms. Richard filed her petition for writ of review asking this Court to reverse the BPR's decision and remand this proceeding for the appointment of a new special bar counsel.  We granted her petition.

## STANDARD OF REVIEW

[¶14]  In a traditional appeal, "[a] district court's ruling on a motion to disqualify for a conflict of interest is reviewed for abuse of discretion." *Magin v. Solitude Homeowner's Inc.*, 2011 WY 102, ¶ 10, 255 P.3d 920, 925 (Wyo. 2011) (citing *Carlson v. Langdon*, 751 P.2d 344, 350 (Wyo. 1988)).  However, this is a disciplinary proceeding.  "Our authority in disciplinary and disability proceedings is plenary." *Bd. Pro. Resp., Wyo. State Bar v. Doe*, 2023 WY 98, ¶ 6, 536 P.3d 1197, 1201 (Wyo. 2023) (citing Wyoming Rule of Disciplinary Procedure (W.R.D.P.) 1(d)).  We conduct a de novo review of all aspects of attorney discipline. *Bd. Pro. Resp., Wyo. State Bar v. Austin*, 2023 WY 110, ¶ 10, 538 P.3d 653, 658 (Wyo. 2023) (quoting *Bd. Pro. Resp., Wyo. State Bar v. Hinckley*, 2022 WY 18, ¶ 4, 503 P.3d 584, 593 (Wyo. 2022)).  Therefore, we review the BPR's decision de novo.

## DISCUSSION

### I. *Is the current disciplinary proceeding substantially related to the 2014 Suspension or the 2017 Reinstatement?*

[¶15]  An attorney's duty to a former client is governed by W.R.P.C. 1.9 which states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless

4

the former client gives informed consent, confirmed in writing. For representation of another person in the same matter the former client's informed consent confirmed in writing shall be signed by the client.

(b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client

(1) whose interests are materially adverse to that person; and

(2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter; unless the former client gives informed consent, confirmed in writing. For representation of another person in the same matter the former client's informed consent confirmed in writing shall be signed by the client.

(c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1) use confidential information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or

(2) reveal confidential information relating to the representation except as these Rules would permit or require with respect to a client.

W.R.P.C. 1.9 (LexisNexis 2023). The key question in this case is whether the current disciplinary proceeding is "a substantially related matter" to those in which Mr. Reeves and Ms. McCorkle previously represented Ms. Richard. Comment 3 to Rule 1.9 states:

Matters are "substantially related" for purposes of this Rule if they involve the same transaction or legal dispute or if there otherwise is a substantial risk that confidential factual information as would normally have been obtained in the prior

5

representation would materially advance the client's position in the subsequent matter.

W.R.P.C. 1.9 cmt. 3. The BPR focused on the first part of the definition of "substantially related" when it determined the three proceedings were not the same or substantially related because the events that resulted in the 2014 Suspension and the 2017 Reinstatement are not related to those in this current disciplinary proceeding, and "the persons and the alleged facts are completely different and in no way related to earlier events." However, the BPR did not consider whether there was a substantial risk that confidential information learned by Mr. Reeves or Ms. McCorkle in their prior representations would materially advance the Bar's position in this proceeding.

[¶16] The purpose of W.R.P.C. 1.9 is to protect the confidentiality of the client's information. *Magin,* 2011 WY 102, ¶ 16, 255 P.3d at 926. "Preservation of a client's confidences has been described as the 'bedrock principle of the Anglo–American legal system.'" *Id.* (quoting *Bevan v. Fix*, 2002 WY 43, ¶ 50, 42 P.3d 1013, 1028 (Wyo. 2002)). This principle is no less important when the client whose confidence is being protected is an attorney facing a disciplinary proceeding.

[¶17] As the Restatement (Third) of the Law Governing Lawyers explains:

> The substantial-relationship test avoids requiring disclosure of confidential information by focusing upon the general features of the matters involved and inferences as to the likelihood that confidences were imparted by the former client that could be used to adverse effect in the subsequent representation. The inquiry into the issues involved in the prior representation should be as specific as possible without thereby revealing the confidential client information itself or confidential information concerning the second client. When the prior matter involved litigation, it will be conclusively presumed that the lawyer obtained confidential information about the issues involved in the litigation. When the prior matter did not involve litigation, its scope is assessed by reference to the work that the lawyer undertook and the array of information that a lawyer ordinarily would have obtained to carry out that work.

Restatement (Third) Law Governing Lawyers, § 132 cmt. d(iii) (March 2024 Update). Professor Burman explained:

> The key to determining substantial relationship is, ultimately, the client's reasonable expectations, the protection of which is at the heart of the Rules. In this context, the question becomes

> whether representing a new client in a new matter will defeat the former client's reasonable expectations of confidentiality and loyalty. If so, the representation should not be undertaken.

John M. Burman, *Professional Responsibility in Wyoming*, 341 (2008).

[¶18] We have adopted a "broad test" for determining whether a substantial relationship exists between two matters: "[i]f the two matters have common facts, the attorney is in a position to receive confidential information which possibly could be used to the detriment of the former client in the later proceeding." *Magin*, 2011 WY 102, ¶ 16, 255 P.3d at 926 (citing *Carlson*, 751 P.2d at 349). Although our case law in this area is sparse, other jurisdictions recognize the phrase "substantially related" has been defined to mean that the "factual contexts of the two representations are similar or related." *Chrispens v. Coastal Ref. & Mktg., Inc.*, 897 P.2d 104, 112 (Kan. 1995) (citing *Graham v. Wyeth Labs.*, 906 F.2d 1419, 1422 (10th Cir. 1990)). Matters are substantially related when they "involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct." *Id.* (quoting *Koch v. Koch Indust.*, 798 F. Supp. 1525, 1536 (D. Kan. 1992)). "[R]elevance is gauged from not only what can be gleaned from the [pleadings] but also from what can be viewed as the nature of the evidence useful or helpful in proving those allegations." *Koch*, 798 F. Supp. at 1537 (citations omitted). "Doubts as to whether a substantial relationship exists should be resolved in favor of disqualification." *Id.* (citing *Westinghouse Elec. Corp. v. Gulf Oil Corp.*, 588 F.2d 221, 225 (7th Cir. 1978)).

[¶19] We have recognized the determination of whether the current and former proceedings are substantially related is inherently factual. *Magin*, 2011 WY 102, ¶ 13, 255 P.3d at 926. As such, we have held when a party raises a "non-frivolous" allegation the matters are substantially related, a court is "obligated to conduct an evidentiary hearing." *Id.* at ¶¶ 13, 15, 255 P.3d at 926. Neither the ROC nor the BPR conducted such a hearing. Although we would normally remand for the appropriate body to hold an evidentiary hearing, the record here contains sufficient information for us to make a determination. *Id.* at ¶ 15, 255 P.3d at 926.

[¶20] The conclusion the current disciplinary proceeding is substantially related to the 2014 Suspension and the 2017 Reinstatement is readily apparent from the pleadings filed by Mr. Reeves and Mr. Gifford in this proceeding. These pleadings show all three proceedings involve the same client, are "relevantly interconnected," and reveal Ms. Richard's alleged "pattern of conduct." *Chrispens*, 897 P.2d at 112 (quoting *Koch*, 798 F. Supp. at 1536).

[¶21] The letter Mr. Reeves sent to Ms. Richard's counsel offering to stipulate to disbarment contains statements comparing the current proceeding to the 2014 Suspension. For example, after setting forth a detailed synopsis of the past and present proceedings, Mr.

Reeves characterizes Ms. Richard's response to the current investigation as "clear and convincing evidence of another false statement made in a disciplinary hearing." Like the 2014 Suspension, Mr. Reeves alleges Ms. Richard violated the Rules of Professional Conduct by not communicating properly with her clients, violating her duty of candor to the tribunal, filing incompetent pleadings, causing unnecessary delays and increasing litigation costs, and committing discovery abuse. Mr. Reeves concludes his letter by stating: "Since Ms. Richard has previously received a three-year suspension for similar misconduct, disbarment is her only option."

[¶22] While arguing the current disciplinary proceeding is not substantially related to the prior proceedings, Mr. Gifford repeatedly referenced the prior proceedings in his responses to Ms. Richard's motions. For example, in his response to Ms. Richard's motion to stay the current disciplinary proceeding, Mr. Gifford claimed this Court "presaged" Ms. Richard's present circumstances in the 2014 Suspension when we said based on her "multi-year pattern of behavior" there was a probability other complaints would come forward, and if they did, this Court might have no alternative but to impose disbarment. In this same pleading, he alleged Ms. Richard had "returned to the pattern of litigation misconduct that got her suspended nine years ago." In his response to Ms. Richard's third motion to disqualify his office, Mr. Gifford alleged it is "evident" Ms. Richard has "relapsed into the conduct that resulted in her 2014 [S]uspension."

[¶23] Similarly, in the underlying malpractice case and the 2017 Reinstatement, Ms. McCorkle became acquainted with the allegations regarding Ms. Richard's "pattern of behavior" and the steps she took to rehabilitate herself. The petition for reinstatement prepared by Mr. Kline and Ms. McCorkle contains an acknowledgement of wrongdoing, particularly relating to discovery matters, and it details the efforts Ms. Richard took to gain insight into her behavior and achieve a mental state to once again undertake the practice of law. The report and recommendation for reinstatement recognized Ms. Richard expressed a "commitment to rehabilitation and [a] desire not to repeat the conduct and behaviors that led to her suspension."

[¶24] The 2014 Suspension, the 2017 Reinstatement, and the current disciplinary proceeding all involve allegations of a repeated pattern of conduct regarding discovery abuse, lack of candor, disobedience of court orders, and other Rule violations. When looking at "the general features of the matters involved," it is reasonable to infer Ms. Richard imparted confidential information to her attorneys in the prior representations which could adversely affect her in the current proceeding. *See* Restatement (Third) Law Governing Lawyers, § 132 cmt. d(iii). The type of information and evidence gathered to defend against the allegations in the 2014 Suspension and pursue the 2017 Reinstatement is exactly the type of information that would be used to prosecute the current disciplinary proceeding. These three proceedings are substantially related within the meaning of W.R.P.C. 1.9.

[¶25] Disciplinary proceedings also contain an element not present in most cases where motions for disqualification are considered. Should we determine Ms. Richard violated the Rules of Professional Conduct, this Court will ultimately have to decide what, if any, discipline to impose. *Austin*, 2023 WY 110, ¶ 10, 538 P.3d at 658 (quoting *Hinckley*, 2022 WY 18, ¶ 4, 503 P.3d at 593). During that part of the proceeding, we consider whether the lawyer acted intentionally, knowingly, or negligently, and whether there are any aggravating or mitigating circumstances to consider before imposing any discipline. *Id.* at ¶ 40, 538 P.3d at 665 (citing W.R.D.P. 15(b)(3)(D)). Aggravating factors include: prior disciplinary offenses; dishonest or selfish motive; a pattern of misconduct; multiple offenses; bad faith obstruction of the disciplinary process; and refusal to acknowledge the wrongful nature of the conduct. *Id.* at ¶ 49, 538 P.3d at 667 (citing ABA *Annotated Standards for Imposing Lawyer Sanctions* (ABA Standards) 9.22 at 451 (Ellyn S. Rosen ed., 2nd ed. 2019)). Mitigating factors include: absence of a dishonest or selfish motive; personal or emotional problems; full and free disclosure to the disciplinary board; a physical or mental disability; character or reputation; and remorse. *Id.* at ¶ 50, 538 P.3d at 667–68 (citing ABA Standards Standard 9.32 at 487). The information Ms. Richard would likely have communicated to Mr. Reeves and Ms. McCorkle in the previous representations would be directly relevant to these factors and could be used to materially advance the prosecution of the current disciplinary proceeding. This further supports the conclusion all three proceedings are substantially related.

[¶26] Because the proceedings are substantially related, under our case law, there is an irrebuttable presumption Ms. Richard communicated confidential information to Mr. Reeves and Ms. McCorkle during the prior representations. *Magin*, 2011 WY 102, ¶ 16, 255 P.3d at 926; *see also Carlson*, 751 P.2d at 349 ("We adopt the rule of irrebuttable presumption with respect to the individual attorney even though we recognize that disqualification of an attorney may prevent another client from obtaining the services of the attorney of his choice.").

[¶27] In *Carlson*, we noted a trial court is charged with the responsibility of supervising the conduct of attorneys practicing before it, and that responsibility includes a duty to disqualify an attorney when it is appropriate. 751 P.2d at 350 (citations omitted). The ROC has a similar responsibility for supervising the Office of Bar Counsel in disciplinary proceedings. *See* W.R.D.P. 4(c)(3) (giving the ROC the power and duty to approve the hiring of Special Bar Counsel if Bar Counsel has a conflict of interest); W.R.D.P. 4(c)(4) (giving the ROC the power and duty to provide general supervision of, guidance to, and oversight of the Office of Bar Counsel). The BPR is not given this enumerated power. *See generally* W.R.D.P. 6.

[¶28] Because the 2014 Suspension and 2017 Reinstatement are substantially related to this disciplinary proceeding, Mr. Reeves and Ms. McCorkle have conflicts under W.R.P.C. 1.9 stemming from their respective representations in those prior matters and must be

disqualified.[4] *See* Restatement (Third) Law Governing Lawyers § 121 cmt. f (March 2024 Update) (stating disqualifying lawyer from further participation in a proceeding is an appropriate remedy for conflicts of interest). The BPR's contrary decision must be reversed.

## II. Do conflicts of interest within the Office of Bar Counsel mandate the appointment of a new, conflict-free special bar counsel to prosecute the current disciplinary proceeding?

### A. Imputation of Conflicts

[¶29] The imputation of conflicts of interests to other attorneys within the same firm[5] is governed by W.R.P.C. 1.10 which states:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless
>
> > (1) the prohibition is based on a personal interest of the disqualified lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm; or
> >
> > (2) the prohibition is based upon Rule 1.9(a) or (b), and arises out of the disqualified lawyer's association with a prior firm, and
> >
> > > (i) the disqualified lawyer is timely screened from any

---

[4] Ms. Richard also asserts Mr. Reeves should be disqualified because he has a concurrent conflict of interest under W.R.P.C. 1.7 (LexisNexis 2023). She asserts that because he is still her counsel of record in her divorce case, he was precluded from serving as Special Bar Counsel in a matter where he would be directly adverse to her without her informed consent, even though the matters are wholly unrelated. *See* W.R.P.C. 1.7 cmt. 6. Although there are not currently any pending matters in Ms. Richard's divorce action, Mr. Reeves never officially withdrew from that representation. Therefore, he may also have a conflict under Rule 1.7. Because we find his conflict under Rule 1.9 requires his disqualification, we will not separately address his conflict under Rule 1.7.

[5] The definition of firm includes: "a lawyer or lawyers in a law partnership, professional corporation, sole proprietorship or other association authorized to practice law; or lawyers employed in a legal services organization or the legal department of a corporation or other organization." W.R.P.C. 1.0(d).; W.R.P.C. 1.10 cmt. 1. This definition applies to all lawyers within the Office of Bar Counsel. *See* W.R.D.P. 5 (stating Bar Counsel is an employee of the Wyoming State Bar whose duties include practicing law and regulating the practice of law); W.R.D.P. 2(k) ("'Office of Bar Counsel' means Bar Counsel and all employees under the supervision of Bar Counsel.").

participation in the matter and is apportioned no part of the fee therefrom;

(ii) written notice is promptly given to any affected former client to enable the former client to ascertain compliance with the provisions of this Rule, which shall include a description of the screening procedures employed; a statement of the firm's and of the screened lawyer's compliance with these Rules; a statement that review may be available before a tribunal; and an agreement by the firm to respond promptly to any written inquiries or objections by the former client about the screening procedures; and

(iii) certifications of compliance with these Rules and with the screening procedures are provided to the former client by the screened lawyer and by a partner of the firm, at reasonable intervals upon the former client's written request and upon termination of the screening procedures.

(b) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer, and not currently represented by the firm, unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.

(c) A disqualification prescribed by this Rule may be waived by the affected client under the conditions stated in Rule 1.7.

(d) The disqualification of lawyers associated in a firm with former or current government lawyers is governed by Rule 1.11.

W.R.P.C. 1.10 (LexisNexis 2023). We must decide whether Mr. Reeves's and Ms. McCorkle's conflicts should be imputed to Mr. Gifford pursuant to W.R.P.C. 1.10.

[¶30] If the Office of Bar Counsel had proper screening procedures in place and provided proper notice to Ms. Richard as required by the Rules of Professional Conduct, then W.R.P.C. 1.10(a)(2) would not require Mr. Reeves's and Ms. McCorkle's conflicts to be imputed to any other lawyer within the Office of Bar Counsel. Based on the record before us, the Office of Bar Counsel did not implement any screening procedures, nor did Mr. Gifford or Mr. Reeves provide notice to Ms. Richard as required under W.R.P.C. 1.10(a)(2). Therefore, we find Mr. Reeves's and Ms. McCorkle's conflicts should be imputed to Mr. Gifford.

[¶31] The record is unclear about what screening measures the Office of Bar Counsel had in place to detect and prevent conflicts of interest from arising at the time it received the complaints against Ms. Richard. However, it is undisputed the Office of Bar Counsel never sent Ms. Richard a notice detailing the screening procedures it employed to keep Ms. McCorkle ethically screened as required by W.R.P.C. 1.10(a)(2).[6] Although this is not a criminal case, Ms. McCorkle has essentially switched sides and become the equivalent of an attorney in a prosecutor's office. *See* W.R.D.P. 5(d) (referring to Bar Counsel prosecuting disciplinary proceedings). In *Hart v. State*, we held in future cases involving a defense attorney switching sides to the prosecution, the prosecuting attorney's side would need to make a showing, on the record, that the attorney who switched sides had been screened from the prosecution of the former client. 2003 WY 12, ¶ 24, 62 P.3d 566, 574 (Wyo. 2003). The Office of Bar Counsel made no such showing here. Therefore, Ms. McCorkle's conflict must be imputed to Mr. Gifford.

[¶32] Similarly, Mr. Gifford sought Mr. Reeves's appointment as Special Bar Counsel before meeting with Mr. Reeves to discuss any potential conflicts. Once Mr. Gifford became aware of Mr. Reeves's prior representation of Ms. Richard, rather than seeking the appointment of a new special bar counsel, Mr. Gifford unilaterally determined Mr. Reeves did not have a conflict of interest and could continue with the representation.[7] Because

---

[6] Throughout this proceeding, the Office of Bar Counsel has devoted most of its pleadings to explaining why Mr. Reeves and Ms. McCorkle did not have conflicts of interest, rather than explaining what, if any, screening measures it has in place to detect such conflicts. According to Bar Counsel's brief, "[e]ach complaint is screened as it is received[,]" and if either Mr. Gifford or Ms. McCorkle have any conflicts, the other attorney simply handles the proceeding. The brief does not detail any other screening procedures that have been put into place to comply with W.R.P.C. 1.10. Although Ms. Richard asks us to set forth what those screening procedures should be, we decline to do so in this opinion. However, we remind the Office of Bar Counsel it is required to implement screening procedures and provide a description of those procedures pursuant to W.R.P.C. 1.10(a)(2).

[7] When asked to serve as Special Bar Counsel in this matter, under W.R.P.C. 1.9(b) Mr. Reeves should have either declined the representation or sent Ms. Richard written notice and asked her to consent to his accepting the representation. If Mr. Reeves and Ms. Richard disagreed about whether he had a conflict of

12

Mr. Reeves was not properly screened and Ms. Richard did not consent to him serving as Special Bar Counsel, we must impute Mr. Reeves's conflict of interest to Mr. Gifford. Allowing Mr. Gifford to continue with the representation "carries a threat of tainting the [proceeding] or compromising the integrity of the adversarial process. Because the insight and knowledge gained through [Mr. Reeves and Ms. McCorkle's] former representation[s] of [Richard] gives [the Office of Bar Counsel] a material advantage in prosecuting [its] claims, the playing field is now tilted." *Koch*, 798 F. Supp. at 1538–39.

## B. Future Use of Mr. Reeves's and Mr. Gifford's Work Product

[¶33]  Once Mr. Reeves was disqualified, Mr. Gifford used Mr. Reeves's work product to draft the formal charge he filed in this proceeding. Although we have not previously addressed whether substitute counsel can use a previously disqualified attorney's work product, other jurisdictions have recognized once an attorney has been disqualified, transferring the work product of that disqualified attorney poses the same threat to the client's confidential information, and it may be necessary to restrict access to the disqualified attorney's work product in order to effectuate the purpose of disqualification. *See In re George*, 28 S.W.3d 511, 515 (Tex. 2000) (citing *EZ Paintr Corp. v. Padco, Inc.*, 746 F.2d 1459, 1463 (Fed. Cir. 1984); *Quark, Inc. v. Power Up Software Corp.*, 812 F. Supp. 178, 180 (D. Colo. 1992); *Hallmark Cards, Inc. v. Hallmark Dodge, Inc.*, 616 F. Supp. 516, 521–22 (W.D. Mo. 1985); *Reardon v. Marlayne*, 416 A.2d 852, 862 (N.J. 1980) *superseded by City of Atlantic City v. Trupos*, 992 A.2d 762 (N.J. 2010). When deciding what work product to protect from disclosure, these courts look to see if there is work that is routine or unrelated to the prior representation. *In re George*, 28 S.W.3d at 516 (citation omitted). Unfortunately, in this proceeding it is impossible to determine what portion of Mr. Reeves's work product is unrelated to the prior representation. Therefore, we find the purposes behind disqualification cannot be fully effectuated without a blanket restriction on the new special bar counsel's use of Mr. Reeves's and Mr. Gifford's work product.

## C. Waiver

[¶34] The Office of Bar Counsel argues Ms. Richard waived her conflict-of-interest argument because she did not demand Mr. Reeves's disqualification in a timely manner. We are unable to find anywhere in the record where Bar Counsel made this argument either before the ROC or the BPR, and Bar Counsel did not direct us to any such place in the record during oral argument. This argument lacks merit. Mr. Reeves did not follow the procedure for notifying Ms. Richard of his potential conflict set forth in W.R.P.C. 1.9(b). Ms. Richard was first notified of Mr. Reeves's involvement in November 2022. Ms.

interest, this issue should have been resolved by the ROC, not the Office of Bar Counsel. *See* W.R.D.P. 4(c)(3) (giving the ROC the authority to appoint Special Bar Counsel); *see also* Restatement (Third) Law Governing Lawyers, § 121 cmt. g ("The reasonableness of a lawyer's initial determination concerning a conflict is subject to later review by a tribunal . . . .").

Richard raised her motion to disqualify less than two months later, before her response to the formal charge was even due. This is not the sort of delay we have previously found to constitute waiver of a motion to disqualify. *See Magin*, 2011 WY 102, ¶¶ 21–25, 255 P.3d at 927–28 (finding the client waived the right to file a motion to disqualify counsel by delaying for over a year after significant work had been completed and a waste of judicial resources would have resulted). We cannot conclude Ms. Richard waived her right to file a motion to disqualify any of her former attorneys or to have those conflicts imputed to the Office of Bar Counsel.

[¶35] Given the numerous conflicts of interest that have occurred in this proceeding, the only appropriate remedy is to remand this matter to the ROC with instructions to appoint a new, conflict-free special bar counsel and to prohibit the Office of Bar Counsel from turning over any of Mr. Reeves's or Mr. Gifford's work product. This means new special bar counsel will have to begin the investigation anew based on the four complaints.

## CONCLUSION

[¶36] The 2014 Suspension, the 2017 Reinstatement, and the current disciplinary proceeding are substantially related because all three proceedings involve factual contexts that are "relevantly interconnected" and reveal Ms. Richard's alleged "pattern of conduct." *Chrispens*, 897 P.2d at 112 (quoting *Koch*, 798 F. Supp. at 1536). Because the proceedings are substantially related, there is an irrebuttable presumption Ms. Richard revealed confidential information to Mr. Reeves and Ms. McCorkle during the previous representations. *Magin*, 2011 WY 102, ¶ 16, 255 P.3d at 926; *Carlson*, 751 P.2d at 349. Mr. Reeves and Ms. McCorkle both have conflict of interests under W.R.P.C. 1.9, and Ms. Richard did not consent to their involvement in the current proceeding. These conflicts must be imputed to Mr. Gifford and the Office of Bar Counsel because screening measures were not properly implemented pursuant to W.R.P.C. 1.10(a)(2). We remand this proceeding to the ROC with instructions to appoint a new, conflict-free special bar counsel, who will begin the investigation anew based on the four complaints.

14